Nov. Term,
1857.

BIDDLE
v.
WILLARD.

---

### BIDDLE *v.* WILLARD, Governor.

There are two terms known to the constitution and statutes of this state; for which the office of judge of the Supreme Court may be held:  1. A term by election, of six years.   2. A term by appointment, for the time intervening between the appointment and the qualification of the person elected at the general election next succeeding the appointment.

Such judges must be elected, 1. Where there is an existing vacancy.   2.

Where an appointee is occupying the office. 3. Where the term for which an incumbent was elected will expire before another election.

To constitute a complete and operative resignation, there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment.

A prospective resignation may be withdrawn at any time before it is accepted; and after it is accepted, it may be withdrawn by the consent of the authority accepting, where no new rights have intervened.

Such a resignation creates no necessity for an election.

The duty of the Governor, upon receiving a resignation creating a vacancy in a judicial office, is to appoint a successor; this is the only notice he is required to give of the existence of the vacancy.

And should the Governor communicate a knowledge of such resignation to the public, the communication would not be such legal notice of the fact, as to make it the duty of the clerks of the several counties to give notice of an election.

APPEAL from the *Marion* Circuit Court.

*Friday, January 15.*

PERKINS, J.—Application for a mandamus. The complaint is by *Horace P. Biddle;* and it states, that at the *October* election in 1852, *William Z. Stuart* was elected a judge of the Supreme Court, for the first district, in the state of *Indiana*, for the term of six years from the 3d day of *January*, 1853, and was commissioned; that he duly qualified and entered upon the duties of his office; that on the 4th day of *August*, 1857, he communicated to the Governor of the state his resignation of said office, in the following terms:

" *Hon. A. P. Willard, Governor:*

" DEAR SIR:—I hereby resign the office of judge of the Supreme Court, to take effect on the first *Monday* of *January* next, (1858).

" Congenial as are the duties of the office—more so than any other in the gift of the people—my private affairs constrain me to resume the practice. The resignation takes effect at a future day, that there may be no inconvenience to the public service, and ample time for the selection of a successor.

" Permit me to embrace the occasion to tender to the people of *Indiana* my heartfelt acknowledgments for the honor I have received at their hands. Very respectfully your ob't servant, W. Z. STUART.

" *Logansport, August 4, 1857.*"

64

CASES IN THE SUPREME COURT

Nov. Term, 1857.

BIDDLE
v.
WILLARD.

The complaint further states, that at the general election in *October*, 1857, *Horace P. Biddle* was elected a judge of the Supreme Court, as the successor of Judge *Stuart*, having received about 25,000 votes, and more than 20,000 of a majority; that he had demanded a commission, &c., and that it had been refused.

In the Circuit Court, a demurrer to the complaint was sustained, and a mandamus refused. Appeal to this Court.

Somewhat of a wide range was taken in the argument of this case, but its merits seem to us to lie in a narrow compass.

There are two terms known to the constitution and statutes of the state, for which the office of judge of the Supreme Court may be held, viz.:

1. A term by election, of six years.

2. A term by appointment, for the time intervening between the appointment and the qualification of the person elected at the general election next succeeding the appointment.

We quote the constitution and statute establishing this proposition. Sections 1 and 16, art. 7, of the constitution read:

" The Supreme Court shall consist of not less than three, nor more than five judges; a majority of whom shall form a quorum. They shall hold their offices for six years, if they so long behave well."

" No person elected to any judicial office, shall, during the term for which he shall have been elected, be eligible to any office of trust or profit, under the state, other than a judicial office."

Article 5, § 18, runs thus:

" When during the recess of the general assembly, a vacancy shall happen in any office, the appointment to which is vested in the general assembly; or when, at any time, a vacancy shall have occurred in any other state office or in the office of judge of any Court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

So far, the constitution. Turning to the statutes, we find section 1 of the general election law providing that, " A general election shall be held annually on the second Tuesday in October, at which all existing vacancies in office, and all offices, the terms of which will expire before the next general election thereafter, shall be filled, unless otherwise provided by law."

And section 2 requires that—

" The clerk of the Circuit Court shall, at least twenty days before such election, certify to the sheriff, &c., what officers are to be elected, and that such sheriff shall give * * * notice," &c. (1).

The provisions of the constitution and statutes we have quoted, it will be seen, not only establish the proposition we have above asserted, but they do more; they specify the cases in which judges shall be elected at the general October election.

The following are beyond doubt such cases:

1. Where there is an existing vacancy. .

2. Where an appointee is occupying the office. And,

3. Where the term for which an incumbent was elected will expire before another election. Neither of these cases was presented at the last October election.

There was no existing vacancy. The election was in October. The vacancy did not occur by Judge Stuart's resignation till January following. The term of no appointee was about to expire. The term for which a judge had been elected was not about to expire.

The question, then, alone remains, was there any other case in which, under the constitution and statutes, an election was to be held for a judge of the Supreme Court, at the last October election? and if so, what was it? For it can scarcely be necessary to remark that an election to fill an anticipated vacancy, could not be valid unless authorized by law. 3 Blackf. 158.

It is contended that there was, or may have been, such a case, viz., where a judge, before the election, had made a prospective resignation to take effect after that, and before the next succeeding election.

VOL. X.—5

After patient reflection, we have not been able to come to such a conclusion.

1. The case does not fall within the letter of the constitution or statutes relative to elections; it does not embrace the material fact of the expiration of the term of office. The elective term of the judicial office is, by the constitution, as we have seen, six years; for that period the successful candidate at an election is chosen; for that period he is disqualified to hold any political office; and for that period he has a right to hold the office of judge. That term of six years cannot expire except by its own limitation. It may be abandoned by the incumbent. It may be vacated of that incumbent by the act of *God*, and by law a new term may be made to then begin; but the term itself can only legally expire by the efflux of time. If, in the case of a prospective resignation, there is an expiration of any term, it is the term attempted to be created by the resignation itself. But such a term is not known to, or contemplated by, the constitution or statutes, and did not in law exist, in this case, if it can in any. This will appear when we consider what a resignation is.

2. To constitute a complete and operative resignation, there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment. *Webster* and *Richardson* define the words *resign* and *resignation*, substantially thus: to resign, is to give back, to give up, in a formal manner, an office; and resignation is the act of giving it up. *Bouvier* says, resignation is the act of an officer by which he declines his office, and renounces the further right to use it. Acc. *Wharton*.

Hence, a prospective resignation may, in point of law, amount but to a notice of intention to resign at a future day, or a proposition to so resign; and for the reason that it is not accompanied by a giving up of the office—possession is still retained, and may not necessarily be surrendered till the expiration of the legal term of the office, because the officer may recall his resignation—may withdraw his proposition to resign. He certainly can do this at any time before it is accepted; and after it is accepted, he may

make the withdrawal by the conset of the authority accept-
ing, where no new rights have intervened. The record no
where shows us, in this case, that the prospective resigna-
tion of Judge *Stuart* was ever accepted; and, therefore, it
does not show that any special term, not known to the law,
was created by it, if in any event there could have been,
which might have been filled at the *October* election.

Nov. Term,
1857.

BIDDLE
v.
WILLARD.

3. It will appear beyond doubt, that a prospective resig-
nation does not create a case for an election in *October*, in
contemplation of law, when we consider how a resigna-
tion is to be made, and the course that is to be afterward
pursued in relation to it.

Section 5, chapter 19, 1 R. S. p. 223, requires the resigna-
tion of a judge to be communicated to the Governor, and
to him alone; and we have been cited to no law, and we
know of none, authorizing the Governor to communicate
a knowledge of such resignation to any one else, and par-
ticularly to the public. And there being no law providing
for such communication, the act of the executive, should
he make it, would be of no legal effect—would in law, be
no notice of the fact, any more than the unauthorized re-
cording of an instrument in writing by the county recorder
in his office, would be legal notice of the existence of such
an instrument. But the duty prescribed to the Governor,
upon the reception of a resignation creating a vacancy in
a judicial office, is, to fill the vacancy by the appointment
of another person as judge. This is all the notice he is re-
quired to give of the existence of the vacancy.

Now, can it be believed for a moment, that it was the
intention of the law that there should be an election to fill
a vacancy of which the electors might not, necessarily,
have any notice? This Court certainly should not, by a
strained construction, fix upon the law-making power an
intention to open such a door to the practice of trickery—
to thus trifle with the elective franchise. Such was not
the intention, for by section 2 of the act regulating elec-
tions, above quoted, it is made the duty of the various
county officers to give notice to the public of all the offices
to be filled at the *October* election; and how could they

give such notice in the case of a prospective vacancy, of which they themselves were not, necessarily, to be notified? We do not mean to say that their omission to give such notice in a case where by law 'an election was to take place, at all events, would vitiate the election. We need not decide as to that point. The people take notice of the general laws of the state — of the legal terms of their public officers, and the expiration of those terms—of the general elections to fill them—of the occupancy, by a public officer, of his office by an appointment, and the time of electing his successor; and such notice might be sufficient to render valid an election in such cases. But in the case of a prospective resignation of a judge, under our constitution and laws, the people have not even this description of notice. They do not, necessarily, know anything of such a resignation until it is made public by the actual vacation of the office, and the appointment of a successor.

And if it be conceded that an election to fill an office at the legal expiration of its term—being one of which the law itself is public notice—would be valid without the actual notice required by statute, the fact will not weaken the inference, as to legislative intention, to be drawn from the statutes; for the law expects such actual notice to be given, and it will be an illegal act on the part of the officers if it is not given. Now, could it have been the intention of the legislature that an election should take place in a case where the notice required by statute could not be given —that the officers should be required to give notice of what they had not notice themselves?

We might pursue the discussion of the case, with a view to its further illustration; but it seems to us that sufficient has been said to plainly vindicate the decision we make— to show, indeed, that we could make no other. 3 Kernan, 350.

The election of Judge *Biddle* at the last *October* election was not in a case provided for by law, and was invalid —was a nullity.

We are unwilling to close this opinion without the remark that the resignation of Judge *Stuart* was made and

carried out in good faith; and being so, was in an unobjec- Nov. Term, tionable mode—was indeed eminently proper, as it gave 1857. the executive timely notice of his intention to vacate the HUNT office on the first *Monday* of *January*, and afforded ample THE STATE. time for the selection, by the executive, of a successor, before the vacancy occurred, to be appointed afterwards. And for any illegitimate inferences, leading to corresponding action, on the part of others, in relation to the matter, he is in no way responsible.

*Per Curiam.*—The judgment is affirmed with costs.

*H. O'Neal, O. P. Morton,* and *J. Coburn,* for the appellant (2).

*J. E. McDonald* and *F. Rand,* for the appellee (3).

(1) 1 R. S. 260.

(2) Counsel for the appellant cited 3 Kernan, 350; Smith's Comm. § 670 *et infra,* and authorities there cited; 3 Hill, 42; *The Governor* v. *Nelson,* 6 Ind. R. 496; *Coffin* v. *The State,* 7 *id.* 157; 4 Selden, 89; 19 Wend. 143; 12 Conn. R. 243.

(3) Counsel for the appellee cited the decision of the U. S. Senate in *Lanman's* case, Gordon's Dig. 1827, appendix, note 1, B; 1 McLean, 509.