No. 9690.

LEECH v. THE STATE, EX REL. WYSOR.

CITY.—*School Trustee.*—*Resignation.*— *Vacancy.*—*Election.*—When a city school trustee resigns his office, to take effect at a future day, the city council may elect to fill the vacancy before the day fixed for the taking effect of the resignation.

INJUNCTION.—*Supreme Court.*—*Jurisdiction.*—The Supreme Court, by virtue of section 1147, R. S. 1881, has jurisdiction to issue an injunction forbidding the enforcement of a judgment below, pending an appeal therefrom, when necessary to maintain the *statu quo*.

From the Delaware Circuit Court.

*O. J. Lotz, R. S. Gregory, J. F. Duckwall, T. J. Blount, C. B. Templer, A. C. Mellett, W. B. Dunn, S. Spooner, L. T. Wilson, W. H. M. Cooper, W. H. Coombs, J. Morris, R. C. Bell, T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks*, for appellant.

*C. E. Shipley, W. Brotherton, J. W. Ryan, G. H. Koons* and *J. S. Frazer*, for appellee.

WORDEN, J.—This was an information in the nature of a *quo warranto* by the appellee against the appellant, the object

of which was to establish the relator's supposed right to the office of school trustee for the city of Muncie, the functions of which were being exercised by the appellant Leech, without right, as was claimed.

There were three paragraphs in the information, but the first and second were withdrawn, so that no question arises upon them. The defendant demurred to the third paragraph for want of sufficient facts, but the demurrer was overruled. Answer, issue, trial by jury, verdict and judgment for the plaintiff.

The first error assigned is that "the court below erred in overruling appellant's demurrer to the third paragraph of complaint." This assignment we proceed to consider.

The essential facts alleged in this paragraph, on which the question involved must be decided, are as follows:

That on June 2d, 1879, the common council of the city of Muncie elected John L. McClintock as one of the school trustees for the school city of Muncie for the full term of three years from that time, who duly qualified and entered upon the duties of his office. That on the first day of March, 1880, the common council then being in session, McClintock presented to that body the following resignation, viz:

"MUNCIE, INDIANA, March 1st, 1880.

" To the Mayor and Common Council, City of Muncie :

" The undersigned respectfully tenders his resignation of the office of school trustee of the Muncie schools, to take effect from and after the 5th day of March, 1880.

(Signed)                                    " J. L. McCLINTOCK."

The record of the proceedings of the common council shows that upon the presentation of the resignation, " on motion of Mr. Adamson, the resignation of Mr. McClintock was accepted." Thereupon the common council, at the same meeting and on the same day, elected the defendant Garrett D. Leech, as such trustee, to fill out the unexpired term of McClintock, resigned.

On the next day, March 2d, 1880, the city clerk issued to

Leech a certificate of his election by the common council, as above stated.

Leech took the oath of office before the county auditor, and entered upon the discharge of his duties as such.   The following allegations are found in the paragraph :

" That thereafter, on the 6th day of March, 1880, the said Garrett D. Leech entered upon the discharge of the office of school trustee of said city, claiming to be the successor of said John L. McClintock for his unexpired term, and has ever since continued to act as such trustee under such claim."

Afterward, at a meeting of the common council held on June 6th, 1881, that body proceeded to an election of a member of the board of school trustees of the city of Muncie, " to fill the place made vacant by the resignation of John L. McClintock," and elected the relator, Wysor, for the unexpired term of McClintock.

The city clerk issued to Wysor a certificate of his election, and the latter took the oath of office.   The paragraph alleges " That thereafter and continuously until the present time, the said Harry Wysor has been ready and willing to discharge all of the duties of his said office, but has been prevented from the full performance thereof by the said defendant, and his claiming to be the rightful and legal school trustee as aforesaid, instead of the said Wysor, in place of the said McClintock.  *  *    That the defendant has no rightful title to or claim to the possession of said office, but unlawfully usurps, intrudes himself into and holds and exercises said office, and unlawfully detains the possession of said office from the said Harry Wysor.   That the said Wysor  *  *  has and holds an interest in said office as rightful school trustee of said city, entitling him to file this information in his own relation."

Prayer for judgment establishing the relator's right to the office, and ousting the defendant, and for other relief.

The 5th section of the act to provide for a general system of common schools, 1 R. S. 1876, p. 780, provides that " The common council of each city, and the board of trustees of

each incorporated town of this State, shall, at their first regular meeting in the month of June, elect three school trustees who shall hold their office one, two and three years respectively, as said trustees shall determine by lot at the time of their organization, and annually thereafter shall elect one school trustee, who shall hold his office for three years. * * * All vacancies that may occur in said board of school trustees shall be filled by the common council of the city or board of trustees of the town, but such election to fill a vacancy shall only be for the unexpired term."

When Wysor, the relator, was elected in June, 1881, to fill out the unexpired term of McClintock, the defendant, Leech, was in possession of the office by the election of the common council to fill out the same term. He was an officer *de facto*, if not *de jure*, in the discharge of the duties of the office, and had been for the space of fifteen months. It may, perhaps, be questioned whether, when the office was thus filled by an officer *de facto*, having color of right and the insignia of title, the office could be said to have been *vacant* so as to author- ize the election of Wysor, in the absence of any proper proceeding to have the supposed vacancy adjudged. But upon this point we make no decision. See, however, upon the question, *Harrison* v. *Simonds*, 44 Conn. 318; *Commonwealth* v. *Baxter*, 35 Pa. St. 263; *The State* v. *Jones*, 19 Ind. 356; *Yonkey* v. *The State*, 27 Ind. 236; *Thomas* v. *Burrus*, 23 Miss. 550; *Colton* v. *Beardsley*, 38 Barb. 29.

It seems to be established, that while the acts of an officer *de facto*, acting under color of lawful authority, are valid as respects third persons, yet, when he is sued for acts which he would have authority to do only as an officer, in order to justify, he must have been an officer *de jure*. See *Colton* v. *Beardsley*, *supra*; *Burditt* v. *Barry*, 13 Hun, 657; *The People* v. *Nostrand*, 46 N. Y. 375; *The People* v. *Weber*, 86 Ill. 283.

This principle, however, seems to us to have no application to the case before us, as the question here is whether the relator or the defendant is entitled to the office in question.

But was not Leech, at the time of the election of Wysor, an officer *de jure* as well as *de facto,* holding under a valid election, and entitled to hold until the expiration of the term for which McClintock had been elected? We think he was.

It is claimed by the appellee that the election of Leech was a nullity, on the ground that there was no vacancy in the office at the time of the election, the time not then having arrived at which McClintock's resignation was to take effect; and authorities are cited to the proposition, that where authority is conferred to fill vacancies in office, not occurring by the expiration of regular terms, there can be no election in anticipation of the vacancy; that there must be an existing vacancy before it can be filled. *Nooe* v. *Bradley,* 3 Blackf. 158; *Biddle* v. *Willard,* 10 Ind. 62. The latter case seems to be relied upon by the appellee, but it differs very materially from the one under consideration.

The statute, we have seen, provides that "All vacancies that may occur in said board of school trustees shall be filled by the common council of the city," etc.

The question arises whether there was such a vacancy as is contemplated by the statute, at the time of the election of Leech to the office.

It seems to us that there was, and therefore that his election was valid, and that he is legally entitled to serve out the unexpired term of McClintock.

The common council, having the power to elect the trustees and fill vacancies in the office, had, as incidental thereto, the power to receive and accept resignations. 1 Dill. Munic. Corp., 3d ed., section 224; *State* v. *Boecker,* 56 Mo. 17.

The resignation of McClintock was, therefore, presented to, and accepted by, the proper authority.

In the case of *Biddle* v. *Willard, supra,* the court said, in defining what a resignation was, "To constitute a complete and operative resignation, there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment."

The resignation of McClintock evinced an intention to relinquish and did relinquish all that portion of his term which was to remain after the 5th day of March, 1880. The common council having accepted the resignation, the office became at once vacant as to the remaining portion of the term; and it was this vacancy which the common council proceeded to fill. There was, in our opinion, such a vacancy as the common council was authorized to fill.

We attach no special importance to the fact that the common council accepted the resignation of McClintock, as the modern doctrine seems to be that an officer has the absolute right to resign, and that his resignation, placed in the hands of the proper officer or body, vacates the office without an acceptance of the resignation. Dillon, at the section above cited and notes. McCrary on Elections, 2d ed., section 260.

In the case of *Biddle* v. *Willard, supra,* much stress is laid upon the fact that the Governor had not accepted the resignation of Judge STUART.

The court said: "The record nowhere shows us, in this case, that the prospective resignation of Judge STUART was ever accepted; and, therefore, it does not show that any special term, not known to the law, was created by it, if in any event there could have been, which might have been filled at the October election."

Whatever force there may have been in this view, it is obviated in the case before us, for here, as has been seen, the common council promptly accepted the resignation of McClintock.

It is not necessary to inquire whether McClintock, after he had presented his resignation to the common council, could, either before or after it had been accepted by that body, have withdrawn it by the consent of that body. If after its acceptance the common council had permitted him to withdraw it, the withdrawal might perhaps have been equivalent to a re-appointment. See *Bunting* v. *Willis,* 27 Grat. 144–155.

The case of *Biddle* v. *Willard, supra,* differs widely from the

present in other respects than the non-acceptance, in that case, of the resignation.

In that case, Judge STUART had, in August, 1857, communicated to the Governor his resignation of the office of judge of this court, to take effect on the first Monday of the next January. In the mean time, at the October election of 1857, an attempt was made to fill the office by election for a full term. And the question was whether the election was valid.

If the Governor had accepted the resignation of Judge STUART, and had, before the first Monday of January, 1858, made an appointment to fill the vacancy, the appointee to hold until the office should be filled by a proper election, and the question had involved the validity of that appointment, the cases would have been nearer parallel. The main ground of the decision in that case was, that there was no vacancy, of which the electors were to be notified, authorizing an election to fill the office at the October election, 1857. The court said: "Section 5, chapter 19, 1 R. S., p. 223, requires the resignation of a judge to be communicated to the Governor, and to him alone; and we have been cited to no law, and we know of none, authorizing the Governor to communicate a knowledge of such resignation to any one else, and particularly to the public. And there being no law providing for such communication, the act of the executive, should he make it, would be of no legal effect—would in law, be no notice of the fact, any more than the unauthorized recording of any instrument in writing by the county recorder in his office, would be legal notice of the existence of such an instrument. But the duty prescribed to the Governor, upon the reception of a resignation creating a vacancy in a judicial office, is, to fill the vacancy by the appointment of another person as judge. This is all the notice he is required to give of the existence of the vacancy.

"Now, can it be believed for a moment, that it was the intention of the law that there should be an election to fill a vacancy of which the electors might not, necessarily, have any notice? * * * * * * * *

"Such was not the intention, for by section 2 of the act regulating elections, above quoted, it is made the duty of the various county officers to give notice to the public of the offices to be filled at the October election; and how could they give such notice in the case of a prospective vacancy, of which they themselves were not, necessarily, to be notified?"

In the case before us, the electors of the trustee, the common council, not only had notice of the vacancy, but accepted the resignation creating it, and accordingly proceeded to fill it.

The conclusion at which we have arrived, that the election of the appellant, Leech, was valid and entitled him to the office for the residue of McClintock's term, is not only right on principle, but is supported by authority. In the case of *Whitney* v. *Van Buskirk*, 40 N. J. L. 463, Whitney had held the office of chief of police of the city of Bayonne. On the 3d of December, 1877, he tendered his resignation of the office to the mayor and council of the city, to take effect on the 1st of January, 1878. The mayor and council accepted the resignation on the 4th of December, 1877, and on that day appointed Van Buskirk to the office, his appointment to take effect on the 1st of January, 1878.

On December 11th, 1877, the council reconsidered their vote of the 4th of that month accepting the resignation of Whitney, and confirming the mayor's nomination of Van Buskirk; but the mayor did not concur in the reconsideration. The council thereupon re-passed the resolution to reconsider, by a two-thirds vote. The question was, whether Whitney or Van Buskirk was entitled to the office; and it was held that the resignation of Whitney, thus accepted, put an end to his right to the office after January 1st, 1878, and that the appointment of Van Buskirk was valid and entitled him to the office after that time, notwithstanding the proceedings of December 11th, 1877.

The view which we take of the question renders it unnecessary to consider whether, on the theory that Leech's appointment was voidable or void because made before McClin-

tock's resignation took effect, the failure of the common council for fifteen months after that time to elect any other person, in the mean time suffering Leech to act as, and discharge the duties of, such trustee, might not be regarded as a ratification of his former appointment, or equivalent to a new one.

We are of opinion, for the reasons above stated, that the court below erred in overruling the demurrer to the paragraph of information in question.

A motion has been made to set aside a restraining order heretofore issued in the cause; but as the order has performed its office, and ceases to have force after the final disposition of the cause in this court, we suppose no formal order setting it aside is necessary.

The judgment below is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

ELLIOTT, J., dissents.

WOODS, J., concurs in the principal point decided, but is of opinion that this court had no power to suspend the force of the judgment of the circuit court pending the appeal, by issuing a restraining order, and therefore that the order should be formally set aside and annulled.

## ON PETITION FOR A REHEARING.

WORDEN, J.—A petition for a rehearing has been filed in this case, but, upon a reconsideration of the questions involved, we deem it unnecessary to add anything to what was said in the original opinion upon the main point in the case.

But the counsel for the appellant ask us to formally pass upon the motion to dissolve and set aside the restraining order which was issued by this court in the cause, and we proceed to do so.

A majority of the court are of opinion that the restraining order was properly issued, and there is, of course, no ground for setting it aside, as it has performed its functions and ceases with the final decision of the cause.

If we are not entirely wrong upon the main point in the case, Leech the appellant was entitled to the office, but by the judgment below he was ousted from it, and another person was adjudged to be entitled to it. The error was apparent on the face of the record. The restraining order operated to hold things *in statu quo,* as if the judgment had not been rendered, until the decision of the cause in this court.

The Code of 1852, section 136, provides that "Restraining orders and injunctions may be granted by the Supreme Court in term time, when necessary and proper for the due exercise of the jurisdiction and powers of such court, or by any judge thereof in vacation," etc. Sec. 1147, R. S. 1881.

This statute we construe to mean that restraining orders, etc., may be issued by this court, or by any judge thereof in vacation, whenever it may be necessary and proper, in the exercise of its appellate jurisdiction, to preserve the rights of parties to a cause pending before it, until the decision of the cause by this court. The case before us is one in which it was, in our opinion, necessary and proper to issue such restraining order.

In many cases in this court, restraining orders have been issued to prevent advantage being taken of a judgment below until the determination of the cause here; though the reports may not show them, because in the opinions pronounced no notice has been taken of them.

The petition for a rehearing is overruled.