Filed April 1, 1891.

———◆———

No. 16,006.

HOVEY, GOVERNOR, *v.* THE STATE, EX REL. SCHUCK.

MANDAMUS.—*Governor Can Not be Mandated.*—The courts can not, by *mandamus*, compel the Governor of this State to act in matters affecting his gubernatorial duties. *Mandamus* does not lie to compel him to issue a commission to a person claiming to be elected to an office. *Gray* v. *State, ex rel.*, 72 Ind. 567, distinguished.

CONSTITUTION.—*Three Departments Distinct.*—One department of the government can not invade the province of either of the other two.

From the Marion Circuit Court.

*A. C. Harris*, for appellant.

*J. D. New, W. New, J. E. McDonald, J. M. Butler* and
*A. H. Snow*, for appellee.

COFFEY, J.—This was a suit instituted by the appellee,
in the Marion Circuit Court, against the appellant, as the
Governor of the State, to compel the latter, by *mandamus*,
to issue to the relator, William A. Schuck, a commission as
the duly elected auditor of Jennings county. The com-
plaint alleges, among other things, that the relator was duly
elected to the office of auditor of Jennings county, at the
regular election held in the month of November, 1890; that
the votes were duly canvassed, and the proper returns made
out and filed in the office of the secretary of state, within ten
days after the date of said election, by which it appears that
the relator was duly elected auditor of said county by a ma-
jority of thirty-nine votes; that on the 24th day of Novem-
ber, 1890, the relator demanded of the appellant, at the office
of the Governor, in the city of Indianapolis, his commission
as such auditor, but the appellant refused, and still refuses,
to issue and deliver to him said commission.

To the alternative writ of mandate the Governor filed a
return, consisting of two paragraphs. In the first paragraph
it is averred, among other things, that on the 10th day of
August, 1885, the relator herein was appointed treasurer of
Jennings county, and held that office until the 18th day of
November, 1886; that on the 8th day of November, 1890,
the treasurer of Jennings county filed with the appellant, as
the Governor of the State, an official affidavit, stating that
the relator had failed to account for and pay over public
moneys received by him as such treasurer, in the sum of
$1,884.06; that the auditor's term in said county began on
the 13th day of November, 1890; that the matter of said
defalcation was known to the voters throughout said county
on the day of election; and that on the 17th day of Novem-
ber, 1890, one Cope, who was an opposing candidate for said

office, and who received the next highest number of votes to the relator, filed with the appellant, as such Governor, a demand, stating that the relator, by reason of said facts, was ineligible to said office, and that he, the said Cope, was elected and entitled to the commission; that on the 20th day of November, 1890, the relator paid to the treasurer of Jennings county the sum of $2,357.66 on said defalcation, but neglected to pay the interest and penalty thereon.

The Governor asked that Cope be made a party with liberty to interplead with the relator and try the question as to which, if either, was entitled to the commission and to have the office.

The court struck out that portion of the return which sought to make Cope a party, and the appellant excepted.

The appellee then replied to the return, among other things, that when he retired from the office of treasurer of Jennings county, on the 18th day of November, 1886, he made settlement with the board of commissioners of said county and paid over to his successor in office all moneys found to be due from him as the treasurer of said county, and took a receipt therefor; that he believed said settlement was correct; that if a mutual mistake did occur in said settlement the amount paid by him on the 20th day of November, 1890, was more than sufficient, as he believed, to cover all amounts found due upon a judicial investigation.

After this reply was filed the appellant added a third paragraph to his return which, in addition to the averments above set out, averred, also, that the commissioners of said county had appointed Daniel Bacon and Frank F. Frecking, two competent men, to examine the books and papers in the treasurer's office during the time the relator was treasurer of said county; that on December 16th, 1890, they reported that after a careful examination of the books, papers and accounts, they found that at the expiration of his term of office there was a balance due from the relator to said county of $4,854.84.

To this answer the appellee replied substantially as in the reply above referred to, adding that the relator did not believe there was any shortage; that if there was he was ready to pay the same; that no other sum had ever been demanded of him than $2,357.66 until the 22d day of December, 1890, when a further claim was made for $2,497.18; that the sum he had paid in would, upon investigation, be found to exceed any shortage against him.

The appellant filed a demurrer to each paragraph of the reply. The court overruled the demurrer to the replies and carried it back and sustained it to the answer. The appellant declining to amend the appellee had judgment as prayed, from which this appeal is prosecuted.

The case has been ably presented, both by oral argument and by the briefs filed in the cause; and we are urged to decide: *First.* As to whether the case is one in which *mandamus* may be maintained; and, *Second.* As to what is the proper construction of article 2, section 10, of our State Constitution.

The first question presented is, in our opinion, the controlling question in the case, for if the Governor can not be mandated in the matter involved in this suit, then the second question does not arise, and anything we might decide in relation to it would be without binding force.

As the writ of *mandamus* will not issue to compel the doing of a thing which is discretionary, it follows also that if the case before us is one where the Governor may be compelled to act he has no discretion to be exercised, and the writ should issue without regard to the construction to be placed upon the constitutional provision above referred to.

It is plain, therefore, that the second question suggested is of but little if any importance in the controversy now before us. We proceed, therefore, to an examination of the question as to whether the case is one in which the Governor of the State may be compelled by *mandamus* to act.

The question as to whether the chief executive of a State

is subject to the control of the courts by means of the writ of *mandamus*, is not new, nor is it without numerous authorities.

Some conflict is found to exist in the adjudicated cases, but it is believed that such conflict arises more from the different provisions of State Constitutions and the particular facts in each case than from a difference of opinion, as the general rules by which such cases are governed. Not only is there some apparent conflict in the cases, but the text-writers do not entirely agree upon the question as to whether the courts possess the power to control the acts of the Governor in any particular case.

Mr. Moses, in his work on *mandamus*, after a somewhat elaborate discussion of the question, and an admission that the courts have no power to control the action of the chief executive of a State in the discharge of his ordinary official duties, nor to compel him to perform any act over which he has the right to exercise his judgment or discretion, reaches the conclusion that the better doctrine is that he may be compelled, by *mandamus*, to perform a duty clearly defined and enjoined by law, and which is merely ministerial in its nature, and neither involves any discretion, nor leaves any alternative. Moses Mandamus, pp. 80, 82.

Mr. Wood, in his valuable work on Mandamus, etc., reaches directly the opposite conclusion, and maintains that an attempt on the part of the courts to interfere with the discharge of executive duties is not only in opposition to our theory of government, and in excess of their power, but is, also, attended with great danger. In discussing the question he says : " If the courts may interfere with the discharge of *any* ministerial duties of the executive department of the government, they may interfere with all, and we should have the singular spectacle of a government run by the courts instead of the officers provided by the Constitution. Each department of the government is essentially and necessarily distinct from the others, and neither can lawfully trench upon

or interfere with the powers of the other ; and our safety, both as to national and State governments, is largely dependent upon the preservation of the distribution of power and authority made by the Constitution, and the laws made in pursuance thereof." Wood Mandamus (2d ed.), p. 88.

Of the adjudicated cases upon the subject now under discussion the case of *People, ex rel.,* v. *Governor,* 29 Mich. 320, is, perhaps, òne of the leading cases. In that case it was urged that the act which appellant sought by *mandamus* to compel the Governor to perform was not to be done in the performance of an executive duty imposed by the Constitution, but was an act in its nature a ministerial act, provided for by statute, and which might, with equal propriety, have been required of an inferior officer, who, beyond question, could have been compelled by *mandamus* to take the necessary and proper action in the premises, and it was argued, for that reason, that the courts possessed the power to control the Governor's action by a writ of *mandamus.*

In answer to this argument Judge COOLEY, who delivered the opinion of the court, said : "But when duties are imposed upon the Governor, whatever be their grade, importance or nature, we doubt the right of the courts to say that this or that duty might properly have been imposed upon a secretary of state, or a sheriff of a county or other inferior officer, and that inasmuch as in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the Governor himself is guilty of a similar neglect. The apportionment of power, authority and duty to the Governor, is either made by the people in the Constitution, or by the Legislature in making laws under it; and the courts, when the apportionment has been made, would be presumptious if they should assume to declare that a particular duty assigned to the Governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to

some inferior office, and consequently, for the purposes of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the Constitution or law, but also to assert a right to make the Governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to intrust to the other departments of the government."

The case of *Bates* v. *Taylor*, 87 Tenn. 319, reported in 28 Am. Law Reg. 341, is in point here.

In that case Bates sought to enjoin the Governor from issuing a certificate of election to H. Clay Evans, and to compel him, by *mandamus*, to deliver a certificate of election which had been made out and signed by the Governor, and attested by the secretary of state as evidence of the fact that Bates had been elected.

In that case the court, by Caldwell, J., said : " The issuance of such commission or certificate, whether called a ministerial or an executive duty, is an official action, whose performance can be neither coerced nor restrained by the courts. An attempt on the part of the courts to control his [the Governor's] action under this statute would be an invasion by one department of the government of the rights of another department, and, for that reason, a violation of sections 1 and 2 of Article 11 of the Constitution, which are in the following language :

" 'Section 1. The power of the government shall be divided into three distinct departments—the legislative, executive, and judicial.

" ' Sec. 2. No person or persons belonging to one of these

departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directly permitted."

Many cases are to be found in which it is held that the Governor of a State can not be compelled by *mandamus* to perform a ministerial duty, among which are *Hawkins* v. *Governor*, 1 Ark. 570; *State* v. *Governor*, 25 N. J. 331; *People, ex rel.;* v. *Bissell*, 19 Ill. 229; *Dennett, Petitioner*, 32 Me. 508; *Mauran* v. *Smith*, 8 R. I. 192; *Jonesboro, etc., T. P. Co.* v. *Brown*, 8 Baxt. (Tenn.) 490; *State* v. *Towns*, 8 Ga. 360; *People, ex rel.*, v. *Yates*, 40 Ill. 126; *Pacific Railroad* v. *Governor*, 23 Mo. 353; *State, ex rel.*, v. *Warmoth*, 22 La. Ann. 1; *Rice* v. *Austin*, 19 Minn. 103; *Appeal of Hartranft*, 85 Pa. St. 433; *State, ex rel.*, v. *Drew*, 17 Fla. 67; *People, ex rel.*, v. *Cullom*, 100 Ill. 472.

On the other hand, many cases are to be found in which it is held that the courts possess jurisdiction to compel the chief executive of a State to perform an act which is purely ministerial in its nature, among which are *State* v. *Governor*, 5 Ohio St. 523; *Bonner* v. *State, ex rel.*, 7 Ga. 473; *Cotten* v. *Ellis*, 7 Jones (N. C.), 545; *Chamberlain* v. *Sibley, ex rel.*, 4 Minn. 309; *Magruder* v. *Swann*, 25 Md. 173. The case of *Chamberlain* v. *Sibley, ex rel., supra*, was overruled, however, by the latter case of *Rice* v. *Austin, supra*.

The cases above cited, as well as all others of the same import, seem to rest chiefly upon the *dictum* of Chief Justice MARSHALL, in the case of *Marbury* v. *Madison*, 1 Cranch, 137. The case of *Marbury* v. *Madison, supra*, was an action brought by Marbury and others to compel President Jefferson's secretary of state, Mr. Madison, to deliver to the plaintiffs their commissions as justices of the peace in the District of Columbia. They had been appointed and confirmed during the administration of President Adams, and their commissions had been signed and sealed. The action was brought in the Supreme Court of the United States, and it was held that the court did not have original jurisdiction

Hovey, Governor, *v.* The State, *ex rel.* Schuck.

in the cause.   This being true, of course, all that is said in the case upon any subject other than that bearing upon the question of jurisdiction is mere *dictum*, but what is said in the opinion upon other subjects, coming as it does from such an eminent source, is entitled to great weight, though not having the force of an adjudication.   Assuming that all said in the case is a correct exposition of the law upon the subject of *mandamus*, we must keep in mind the fact that it was not a suit against the President of the United States, but a suit against the secretary of state, and the language used must be construed with reference to the case then before the court.

We are not justified in assuming that Chief Justice MAR-SHALL would have used the same, or similar, language, had the action been brought against the President of the United States ; nor do we think the case is in point in an action against the chief executive of a State.   It does apply, however, in an action against the secretary, auditor, or treasurer of a State, or other administrative officer.   The cases, therefore, above cited, resting upon the case of *Marbury* v. *Madison*, in which it is held that the chief executive of a State may be compelled, by *mandamus*, to perform ministerial duties, rest upon authority which does not sustain the conclusion reached, and should not be followed.

It is claimed by the appellee that the question of the power of the courts in this State to compel the Governor, by *mandamus*, to perform merely ministerial duties is settled, and the cases of *Governor* v. *Nelson*, 6 Ind. 496 ; *Biddle* v. *Willard*, 10 Ind. 62 ; *Baker* v. *Kirk*, 33 Ind. 517, and *Gray* v. *State, ex rel.*, 72 Ind. 567, are relied on to sustain this contention.

In the case of *Governor* v. *Nelson*, *supra*, the parties sought to obtain a construction of certain constitutional and statutory provisions, and no question relating to the power of the courts to compel the Governor to act was presented to the court or decided.

In the case of *Biddle* v. *Willard*, *supra*, the writ was denied, and the question of jurisdiction was not raised or decided by the court.

The case of *Baker* v. *Kirk*, *supra*, was submitted to the court upon an agreed statement of facts, and sought to obtain a construction of certain statutory provisions relating to the election of directors of the State Prison South, and no question was made, or decided, as to the power of the court over the acts of Governor Baker.

The case of *Gray* v. *State, ex rel.*, *supra*, was brought against the Governor, the attorney general, the secretary of state and the treasurer of state, to compel them to redeem a certain bond, under the provisions of an act approved December 12th, 1872. In that case the point was made that the Governor could not be compelled by *mandamus* to act, but this court said : "The Governor and the other officers named in the act may well be regarded as constituting a board, organized by the Legislature for the performance of certain duties ; and a mandate will lie against them to enforce the performance of the duties prescribed." This branch of the case proceeds upon the theory that executive duties can be performed by the Governor alone, and that as the act constitutes him a member of a board where he is required to act with others, his duties can not be said to pertain to the executive department of the State.

It is unnecessary that we should express our approval or disapproval of this case, as it must be apparent to every one, upon a moment's reflection, that the case before us is distinguished from this case and rests upon entirely different principles.

We do not think the cases cited settle the question in this State that the courts have the power to compel the Governor by writ of *mandamus* to perform any act enjoined upon him, either by the Constitution or laws of the State, where such act pertains to a duty to be performed by him as the Governor of the State. If such power exists we must look else-

where than to the decisions of this court to find it.    It can not exist unless it is conferred by the Constitution of the State, or unless it is one of the inherent powers of the courts.

Our State Constitution, article 3, section 1, is as follows: " The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

This provision does not differ materially, in legal effect, from the provision above copied from the Constitution of the State of Tennessee.    Under this provision of our Constitution, above quoted, it has been said by this court that the powers of the three departments of State are not merely equal, they are exclusive in respect to the duties assigned to each.    They are absolutely independent of each other.    They are equal, co-ordinate, and independent.    This division of power prevents the concentration of power in the hands of one person, or class of persons.    *Wright* v. *Defrees*, 8 Ind. 298; *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185; *State, ex rel.,* v. *Denny*, 118 Ind. 382; *City of Evansville* v. *State, ex rel.*, 118 Ind. 426 ; *State, ex rel.,* v. *Denny,* 118 Ind. 449 ; *State, ex rel.,* v. *Noble,* 118 Ind. 350.

In the last case cited it was held that neither the legislative nor the executive departments of the State could interfere with the duties, or functions, of this court.

It is true that the legislative department may increase, or diminish, the jurisdiction of the court, and may, within the terms of the Constitution, prescribe rules of practice.    It is within the province of the courts to expound and enforce such laws as the legislative department may enact within the constitutional limit, and to decline to enforce such as are in conflict with the Constitution.    It is within the province of the executive department of the state to discharge such duties as are imposed upon it by the Constitution of the State,

and such as may be imposed by valid enactments of the legislative department. In each of these cases the department acting, or declining to act, is within its legitimate sphere; and if either department fails to perform its duty the remedy is not to be found in the attempt of some other department to perform such duties.

Such attempt would be usurpation, more dangerous to free government than the evil sought to be corrected. Should we attempt to control the Governor in the matter of the discharge of any of the duties pertaining to his office as Governor, we would be taking one step in the direction of absorbing the functions of the executive department of the State. This we should not do, unless the case before us is such that we are driven to such course by an unbroken chain of precedents, in like cases, from which there is no escape.

The case before us, as we understand the pleadings, is this: At the November election, in 1890, the relator received the highest number of votes for the office of auditor of Jennings county, which fact was duly certified to the secretary of state. Prior to the time the relator called for his commission the treasurer of Jennings county filed with the Governor an affidavit to the effect that the relator, prior to his election, had been the treasurer of said county, and had failed to account for a large amount of the funds which had come into his hands as such treasurer. Subsequently Mr. Cope appeared and claimed that he was elected to the office for which the relator demands a commission upon the ground that the relator was ineligible to the office, which fact was known to the electors of Jennings county at the time of the election, and that he, Cope, received the next highest number of votes for the office. Under these facts the Governor decided not to issue any commission.

We think the Governor's decision in this matter must be taken as final. The case is not one where the Governor is acting as the member of a board created by legislative enact-

ment, in a matter wholly disconnected with his functions as Governor of the State ; but it is a case where he is required to act as Governor. It is his office, as chief executive of the State, that gives force and vitality to the commission. He executes it as the Governor of the State of Indiana ; and whether he derives his power to do so from the Constitution of the State, or by legislative enactment, without the office of chief executive behind it, it is of no validity.

Having reached the conclusion that the courts of this State have no power to control the Governor in matters of the kind before us, and that the conclusion of the Governor in the particular here involved is final, it follows that the Circuit Court erred in overruling the demurrer of the appellant to the replies, and in sustaining it to the answers.

Judgment reversed, with directions for further proceedings not inconsistent with this opinion.

Filed April 4, 1891.