William F. SAMMONS, Judge of the
Newton Circuit Court, Appellant
(Defendant Below),

v.

Kyle D. CONRAD, Clerk of the Newton
Circuit Court, Jeryl F. Leach, Appellees
(Plaintiffs Below).

No. 56S00–0011–CV–635.

Supreme Court of Indiana.

Dec. 22, 2000.

Karen M. Freeman–Wilson, Attorney
General, Jon Laramore, Deputy Attorney
General, Indianapolis, Indiana, Attorneys
for Appellant.

Nana Quay–Smith, Candace L. Sage,
Bingham Summers Welsh & Spilman, In-
dianapolis, Indiana, R. Steven Ryan, Kent-
land, Indiana, Attorneys for Appellees.

**ON PETITION TO TRANSFER**

BOEHM, Justice.

**Factual and Procedural Background**

Newton Circuit Court Judge Robert Smart died on February 25, 2000. Judge Smart was last re-elected in 1998 and his current term would have expired December 31, 2004. Within ten days of Judge Smart's death, the Clerk of the Newton Circuit Court certified the vacancy to Governor Frank O'Bannon. On May 17, Jeryl Leach filed with the Secretary of State to have his name placed on the ballot for Judge of the Newton Circuit Court.[1] Indiana Code section 3–8–1–16 sets out the requirements for a candidate for Judge of the Circuit Court, and Mr. Leach met all of them.

On August 21, the Indiana Election Division issued a certification of candidates to appear on the November 7, 2000 general election ballot. The office of Newton Circuit Court Judge was not on this certification. In a separate action that same day, Candy Marendt, Republican Co–Director of the Indiana Election Division, unilaterally and without agreement by her Democratic co-director, issued a certification containing Mr. Leach's name as the Republican candidate for Newton Circuit Court Judge. No registered voter from Newton County filed a challenge to Mr. Leach as a candidate with either the State Election Commission or the Newton County Election Board.

On September 1, Governor O'Bannon appointed William Sammons to fill the vacancy created by Judge Smart's death. Judge Sammons also met all the statutory requirements for Circuit Court Judge. Judge Sammons did not attempt to have his name placed on the ballot for the November 7, 2000 general election because he believed that Indiana Code section 3–13–6–1 provided that his appointed term would

end in 2002, not 2000, and he accepted the appointment with that understanding. He has since closed his law practice and assumed the judicial office.

At the November 7 general election, Mr. Leach received some 3500 votes for the office of Newton Circuit Court Judge. Mr. Leach's name was the only name on the ballot for Newton Circuit Court Judge.

This appeal arose out of an action filed on September 27, by Mr. Leach and Newton Circuit Court Clerk Kyle Conrad to seek a declaratory judgment that Mr. Leach was properly certified as a candidate on the November 7, 2000 ballot. Judge Sammons filed a motion on October 23, for a preliminary injunction enjoining Conrad from placing Mr. Leach's name on the ballot, but that motion was denied. An effort to appeal the denial of preliminary injunction was rendered moot by the intervening election. After conducting a hearing on November 15, a special judge entered final judgment in favor of Mr. Leach and Conrad, finding that: (1) Mr. Leach's name was properly on the November 7 ballot; (2) Mr. Leach's election as Judge for a six-year term beginning January 1, 2001, was valid; and (3) Judge Sammons' appointed term expires December 31, 2000. Judge Sammons appealed the judgment of the trial court and we granted transfer pursuant to Appellate Rule 4(A)(9).

**I. Indiana Code section 3–13–6–1**

█ The principal issue presented by this case is whether the office of judge of the Newton Circuit Court was an office eligible for election in the November 2000 general election. Mr. Leach presented a candidate's filing under the appropriate statute, and was certified by the Indiana Election Division. That certification, though defective for reasons explained in

---

1. The record does not reveal the procedure by which Mr. Leach was selected, presumably pursuant to Indiana Code section 3–13–1–6, when no Republican filed in the primary. The filing was made within the time required

by Indiana Code section 3–13–1–7. Judge Sammons does not allege that there was an error, other than the certification by Marendt, in the paperwork filed by Mr. Leach to have his name placed on the ballot.

Part II, was not challenged until the unsuccessful preliminary injunction motion of October 23. Judge Sammons concedes that this procedural error in certification cannot be raised after the election if the substantive ruling to place the office on the ballot was correct. Mr. Leach received the majority of the votes in the election. As a result, if the office was eligible for election by the voters of Newton County in the fall of 2000, Mr. Leach was the winning candidate and should take office on January 1, 2001.

The relevant constitutional provision is Article V, Section 18. It states that if a "vacancy shall have occurred … in the office of Judge of any Court, the Governor shall fill such vacancy, by appointment, which shall expire when a successor shall have been elected and qualified." Thus, the Governor's power of appointment is limited to the period until a successor is elected, but there is no other constitutional limitation on the time for filling the vacancy after it occurs. In this case, the appointment took place on September 1, 2000. At that time, the period for filling vacancies on the ballot for offices that were up for election on November 7, 2000 had expired, but the election had not yet been held.

In *State ex rel. Custer v. Schortemeier*, 197 Ind. 507, 516, 151 N.E. 407, 409 (1926), this Court held, at a time when there was no relevant statute, that a circuit court vacancy is limited to the period until the next general election. *Accord Stanek v. Marion County Election Bd.*, 262 Ind. 397, 399, 316 N.E.2d 830, 832 (1974); *Harrison v. Alexander*, 224 Ind. 450, 454, 68 N.E.2d 784, 785 (1946); *State ex rel. Middleton v. Scott Circuit Court*, 214 Ind. 643, 645–46, 17 N.E.2d 464, 465 (1938). The General Assembly has since provided that a person appointed by the Governor to fill a vacancy in a circuit court judgeship is to serve "until (1) the end of the unexpired term; or (2) a successor is elected at the next general election and qualified; whichever occurs first." Ind.Code § 3–13–6–1 (1998).

The statute, by its terms, thus provides for the term of the appointee to run from the appointment until "the next general election." The next general election following the September 1 appointment was conducted on November 7, 2000. Judge Sammons argues that because the filing deadlines had expired before the appointment was made, the "next" general election after the appointment will be held in 2002. He notes that it may be difficult to locate suitable candidates who must disrupt a law practice or other career path if the guaranteed judicial career is measured in months. He points to other practical difficulties in short-term or eve-of-election vacancies. We agree that the statute may create significant practical problems in filling vacancies because of the statutory limitation that the appointment expire at the "next general election," but find the statute to prohibit an appointment that survives the "next general election." *Biddle v. Willard*, 10 Ind. 62, 1857 WL 5759 (1857), the only authority Judge Sammons cites for the contrary view, held that a resignation submitted before an election but to take effect after the election did not create a vacancy subject to the intervening election. The effective date of the resignation, not the date of submission of the resignation, created the vacancy and was the trigger by which the "next" election was measured. Here the death of Judge Smart was the event that created the need for a successor to be elected. Otherwise stated, the appointment defined the term of the appointee, but did not affect the outer limits of the appointee's term, which was and remained only until a successor was elected and qualified. If a successor is elected at the next general election, the beginning of the term of that person is the point at which "a successor" shall have been elected and qualified, as that phrase appears in Article V, Section 18.

Judge Sammons points out that this statutory scheme creates an incentive for the Governor to delay filling a vacancy, and at the same time raises significant

deterrents to acceptance of the position by qualified candidates. We agree that these are persuasive considerations. Nevertheless, it is the scheme the General Assembly has provided for circuit court vacancies. Although it presents difficulties for a governor and an interim appointee, it is not irrational. The constitution itself contemplates the filling of this office only as an interim measure. And, unlike most other offices where vacancies are filled "for the unexpired term,"[2] the six-year term of a Circuit Judge will necessarily be in a different election from other offices every other election. In contrast, the statewide offices of Governor, Lieutenant Governor, and Attorney General are forever joined at the hip by the four-year election cycle and the provision that vacancies are filled until the end of the unexpired term, even if there is an intervening election. Similar provisions apply to the other statewide offices that are elected in the non-presidential election years, and to groups of county offices.

Mr. Leach, by filing and seeking an office that had not been filled, correctly identified that a vacancy had been created that could be filled at "the next general election" whether or not an interim appointment was made. If there were no appointment by that time, the power to fill the vacancy would be terminated as of January 1 of the following year if the November election produced a winner who would be "elected and qualified." Similarly, if no circuit court judge had been elected in November, then a vacancy would again arise, and the position could again be filled by appointment until the 2002 election produced a successor. Whether this arrangement for circuit court judges is preferable to the more prevalent scheme that permits an appointee to serve for the remainder of the unexpired term is debat-

able. Both Judge Sammons and Mr. Leach have effectively presented persuasive arguments for their respective constructions of this statute. In the end, however, we conclude that the General Assembly has provided for an election to fill the vacancy at the earliest date and accordingly affirm the trial court on this issue.

## II. Certification by One Co–Director of the Election Division

■ The trial court concluded that Mr. Leach's certification, signed by only one of the two co-directors of the Indiana Election Division, was valid. The court interpreted the language of Indiana Code section 3–6–4.2–3 and concluded that even though the co-directors were intended to be "equal," each of the co-directors may act independently. We do not believe that this conclusion is correct in light of the language of the statute and the limited legislative history available to us.

The original bill to establish the Indiana Election Commission and the Indiana Election Division was passed by the Indiana House without amendment and slightly modified in the Senate. Pub.L. No. 8–1995, §§ 1–34, 1995 Ind. Acts 1289–1310. It replaced the partisan Election Board, controlled by the party of the governor, that was responsible for some noteworthy decisions in the past. *See State Election Bd. v. Bayh,* 521 N.E.2d 1313 (Ind.1988). Because the House rejected the Senate's changes, the bill was brought to the conference committee. There, the language providing for the leadership of the Election Division underwent significant changes. Indiana House Journal at 1161 (1995). In the original bill, the Election Division was to have a single executive director, appointed by the bi-partisan Election Commission. *Id.* Because the

2. *See* Ind.Code § 3–13–4–3 (1998) (appointees to state office other than governor, lieutenant governor, or a judicial office hold office for the remainder of the unexpired term); *Id.* § 3–13–6–2 (appointed prosecuting attorneys hold office for the remainder of the unexpired term). Persons appointed to most other courts of record also serve the balance of an unexpired term. *Id.* § 3–13–6–1(c). Many of these, unlike circuit courts, are not elected offices in the first place.

Election Commission was designed to have four members, two from each party, the director would have to represent a compromise agreeable to both Republicans and Democrats. The version of the bill that emerged from the conference committee, and that was eventually enacted into law, created co-directors from two different political parties, to be appointed by the governor. *Id.* § 3–6–4.2–3. To ensure that both co-directors truly represented their parties and were not merely nominal representatives, the governor was required to select co-directors from persons nominated by the respective state party chairs. *Id.* § 3–6–4.2–8.

The attempt to create a truly bi-partisan Election Division extended past the co-directors and into the administrative staff. Indiana Code section 3–6–4.2–5 provides that "[t]he employees of the election division must be divided equally between the major political parties of the state." The Code also provides that the "co-directors may each employ an equal number of employees" and "[t]he commission shall provide equal funding to each co-director with which to employ employees." *Id.* §§ 3–6–4.2–6 to –7. The Election Division even has oxymoronic "co-general counsels." It seems quite clear that the legislature intended the Election Division, like the Commission, to be a perfectly balanced agency that could act only when its co-directors agreed. To allow either to act unilaterally renders the deliberate steps taken to maintain an equal budget and staff meaningless.

If a single co-director may not act independently, then Mr. Leach's certification, signed only by Marendt without authority of her counterpart, was invalid. Nevertheless, the Newton County Clerk treated it as valid and placed Mr. Leach's name and the office of Circuit Court Judge on the ballot of the November 2000 election.

Because there is no explicit statutory procedure for challenging an invalid certi-fication from the Election Division, the question is what remedy is appropriate. Mr. Leach argues, and we agree, that the proper way to challenge an allegedly invalid certification is provided in Indiana Code section 3–8–1–2. This is the general statute allowing any registered voter to file a complaint with a county election board or the Election Division questioning the "eligibility" of a candidate to seek a particular office. A candidate may be ineligible because he or she does not meet residency or other requirements for the office. This case presents the far less typical scenario where the claim is that the candidate is ineligible because the office itself is not properly on the ballot. Although Marendt's certification was made on August 21, no effort to review or challenge that action was made until the preliminary injunction motion of October 23, which was unsuccessful. Because the resolution of that issue ultimately turned on the merits of the issue discussed in Part I, and because we conclude the office was properly on the ballot, this is a moot point.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.