STATE EX REL. PALM ET AL. *v.* CITY OF BRAZIL ET AL.

[No. 28,278. Filed June 12, 1947. Rehearing Denied October 14, 1947.]

Cooper, Royse, Gambill & Crawford, of Terre Haute, and Harvey L. Fisher, of Brazil, for appellants.

John W. Baumunk, of Brazil, and Cadick & Burns, of Indianapolis, for appellees.

YOUNG, J.—Two of relators were formerly policemen and three were firemen in the City of Brazil, Indiana, and filed this action against the appellees, alleging that they had been unlawfully dismissed as policemen and firemen respectively and asking that appellees be mandated to re-instate them and to pay them their salaries as such for each month since the date of their alleged wrongful dismissal.

In the complaint it was alleged that each of the relators had been duly appointed as a city policeman or fireman, and was serving as such on August 1, 1945, when he was dismissed without cause and without the filing of any charge against him and without hearing. Appellees filed answer admitting that Brazil is a city of the fifth class, organized under the laws of the State of Indiana, and for many years prior to August 1, 1945, had continuously maintained a regularly organized police and fire department, and denying all other allegations of the complaint. The trial court found for appellees and denied relators the relief prayed for.

Both the relators and appellees agree that the court's decision was based upon the hypothesis that relators resigned and were not dismissed. We think the record justifies this approach. Having tried the case on this theory and having decided it in favor of the City and its officers, it follows that the trial court found that the relators had resigned and that their separation from the police and fire departments of Brazil was due to resignation and not to dismissal. We may not weigh the evidence upon this issue but must accept the court's conclusion, if there is any substantial evidence to support it. *City of Peru* v. *State ex rel. McGuire* (1936), 210 Ind. 668, 670, 199 N. E. 151. We find substantial evidence that prior to July 24, 1945, the policemen and firemen of Brazil had asked the city council of Brazil to increase their salaries $40.00 per month. A committee to represent the policemen and firemen was organized, employed counsel and appeared before the city council on July 24, 1945. The mayor and all members of the Board of Public Works and Safety were present at the council meeting. The council declined to raise the salaries as much as was desired by relators and thereupon relators, through their committee and counsel, announced that they would not accept the raise granted and were resigning and were walking off the job and quitting on August 1. The mayor told them that "If that is the way you want it, that is the way it will be." The minutes of the council meeting showed that the salaries of policemen and firemen were increased $20.00 per month and then appeared the following: "Policemen and Firemen Committee and their Attorney, Harvey Fisher, announced to the mayor and council their refusal to accept the above increase and were walking off and quitting their respective jobs August 1, 1945." All this was

sufficient evidence to support the decision of the court that relators had resigned.

On July 30, 1945, each of the relators was given a notice signed by the mayor that he was removed and dismissed as fireman or policeman, as the case happened to be, effective at the changing of shifts on the morning of August 1. On July 31, the committee representing the policemen and firemen delivered to the mayor a written notice to the effect that the policemen and firemen had met and reconsidered the matter of their wages and decided to accept the salaries offered by the council and to remain on the job as firemen and policemen. Relators reported for work on August 1, but the mayor told them there was no work for them and to gather up their belongings and surrender city property and to check out,

It is argued by relators that the Board of Public Works and Safety acts only at its meetings and speaks only by its records and that its records are conclusive and show that relators were dismissed without notice or hearing. The evidence on this phase of the case showed that there were no minutes of any meeting of the Board of Public Works and Safety held on July 24, 1945. Minutes of a July 31 meeting contain copies of the notices of dismissal signed by the mayor to each of the relators, to which attention has been called above. The minutes also show service of such notices upon relators by the chief of police and further show a report by the mayor to the effect that he had removed and dismissed relators to improve the service, to promote efficiency and to promote more cooperation in the fire and police departments and to provide better service for the citizens of Brazil. These notices and this report, all signed only by the mayor, are simply set out in the

minutes. No action by the Board upon the same is shown and no dismissal by the Board is shown.

Minutes of an August 14, 1945 meeting show the submission of an additional report by the mayor. This additional or supplemental report reads as follows:

"TO THE BOARD OF PUBLIC WORKS AND SAFETY, THE COMMON COUNCIL, AND THE CITY CLERK-TREASURER OF THE CITY OF BRAZIL, INDIANA:

I, Clint M. Wilson, as Mayor of the City of Brazil, Indiana, having heretofore on the 31st day of July, 1945, reported to you that I had removed and dismissed Dewey Albright, Fireman, Ralph Garrigus, fireman and Raymond Wright, Assistant to the Chief of the Fire Department, Stanley Palm, Patrolman and A. T. Hathaway, Patrolman of the City of Brazil, Indiana, effective at the changing of the morning shifts on August 1st, 1945, for the following reasons: 1. To improve the service, 2. To promote efficiency; 3. To promote more cooperation in the Fire Department and the Police Department of the City of Brazil, Indiana, and to provide better service for the citizens of Brazil, Indiana, to which reports I now attach this amended and completed report as follows: and say the facts to be; that heretofore the said Dewey Albright, Ralph Garrigus, Raymond Wright, Stanley Palm and A. T. Hathaway as herein stated, at the regular Council meeting of the Common Council held in the Council Chamber of the City of Brazil, Indiana on the 24th day of July, 1945, appeared with their counsel Harvey Fisher and a committee of others representing the Firemen and Policemen of the City, and the following proceedings were had:

Councilman Price moved that the Firemen's and Patrolmen's wages be increased $20.00 each, each month commencing September 1st, 1945.

Said motion was duly seconded and same was passed by the Council without a dissenting vote and approved by the Mayor, the presiding officer, whereupon the said Dewey Albright, as Fireman

and A. T. Hathaway, as Patrolman and the other Committee of Firemen and Patrolmen and their counsel Harvey Fisher announced to the Mayor and Common Council and Board of Public Works and Safety, that they and each of them would not accept said increases of wages, and stated that they and each of them were walking off their respective jobs and quitting same on August 1st, 1945.

I thereupon accepted said statements as to their voluntary terminations of their employment with the City and proceeded to fill said vacancies by employing others to fill same.

And the intention of the notices heretofore served on the 31st day of July, 1945 on the said Dewey Albright, Ralph Garrigus, Raymond Wright, Stanley Palm and A. T. Hathaway, the same parties stated herein, was for the purpose of making the record showing their removals from the Payroll, and in accordance with their voluntary statements of quitting their jobs on that date, and for the purpose of notice to them and the Clerk-Treasurer of the City that no further payments of wages were due them from said date.

All of which is respectfully submitted.

CLINT M. WILSON,
As Mayor of the City of Brazil, Indiana"

It does not appear that any action was taken by the Board of Public Works and Safety upon this report.

It seems to be the position of relators that the copies of dismissal by the mayor and the mayor's report of dismissal set out in the minutes of the meeting of the Board of Public Works and Safety are conclusive that they had been dismissed and that their termination of service was not due to resignation. Assuming, without deciding, that the Board of Public Works and Safety speaks only by its minutes and that its official acts may be proved only by its records, it does not follow that such records are conclusive as to acts or conduct of others. It will be observed that the notices and report

of dismissal set out in the minutes had to do only with acts of the mayor. No action by the Board approving the action of the mayor is shown and no action by the Board dismissing relators appears.

Proof of what the mayor and what relators did was not limited to the Board's minutes. As we view the situation, these notices of dismissal by the mayor and the reports by the mayor appearing in the minutes were simply evidence to be weighed and considered along with all the other evidence in determining whether relators resigned or were dismissed, and the trial court having resolved the issue of resignation against relators, we cannot weigh the evidence and substitute our judgment for the judgment of the trial court. We are bound by its factual conclusions.

The policemen and firemen involved in this law suit were not officers but were employees. Their relations to the city were entirely contractual. *City of Evansville* v. *Maddox* (1940), 217 Ind. 39, 45-6, 25 N. E. (2d) 321; *State ex rel.* v. *City of Washington* (1936), 212 Ind. 38, 43, 7 N. E. (2d) 968; *City of Peru* v. *State ex rel., supra.* The policemen's and firemen's tenure act, § 48-6105, Burns' 1933 (Supp.) was a part of their contracts of employment and they could not be dismissed except by the Board of Public Works and Safety after charges had been filed and notice had been given and hearing had been held. There is nothing in the statute, however, and there was nothing in the contracts of relators herein prohibiting *them* from terminating their contracts of employment at will. The mayor is the chief executive and administrative officer of the city and, by statute, is "responsible for the good order and efficient government of the city." § 48-1502, Fifth, Burns' 1933. When city firemen and policemen elected to terminate their contracts, some-

times called resigning, and so advise the responsible head of the city government, their contracts of employment are at an end. They could not be compelled to work and their rights under the tenure act could be waived. *Daley* v. *Judge of Dist. Court* (1939 Mass.), 23 N. E. (2d) 1. They could voluntarily quit their employment at any time for any reason satisfactory to them. After doing so they could not claim any benefits under the tenure act. The tenure act was not passed for the benefit of those who quit and resign their jobs, *State ex rel. Powell* v. *Bowen* (1936), 211 Ind. 669, 673, 7 N. E. (2d) 995, but for those who are wrongfully dismissed.

Relators refer to Chapter 119 of the Acts of 1945 § 49-206a, Burns' 1933 (Supp.). They seem to consider that this statute requires all resignations to be in writing. The statute does not say so. It simply provides that where resignations are in writing such resignations may not be withdrawn without the consent of the person or authority of government having power, by law, to fill the vacancy created by the resignations. We do not construe this as meaning that resignations of city employes may not be submitted orally.

It is also contended by relators that their resignations, if treated as such, were conditional. It is true that relators stated they were quitting *if* their demand for greater salaries was not met. This demand had already been denied so that in substance and effect the resignations were not conditional. The city council, which fixed the salaries, had met and acted upon the demands of the relators. There was no "if" in this action. When this action was taken the relators elected to terminate their contracts of employment and quit their jobs beginning upon a fixed date

only one week later. The effect of this was to leave the city without police and fire protection and imposed upon the mayor, who was by statute "responsible for the good order and efficient government of the city," the duty to obtain others to fill the prospective vacancies and to save the city from the danger of a situation which was imminent. The evidence shows that the mayor immediately began efforts to replace the policemen and firemen who were quitting. It is true the relators themselves subsequently changed their minds and, on July 31, delivered to the mayor a written notice that they had reconsidered and decided to remain on the job, but it was then too late. They had terminated their contracts and could be restored only by re-employment.

Relators further complain that not all of the policemen and firemen who submitted resignations were actually separated from their employment. This is without significance. This was equivalent to a rehiring and resulted in a new contract of employment. (See *Leech* v. *State ex rel.* v. *Wysor* (1881), 78 Ind. 570, 575.)

Believing that there was substantial evidence to support the finding of the court that relators' separation from their positions was caused by voluntary termination of their contracts of employment, and that the notices of dismissal and the records of the board of Public Works and Safety were, under the circumstances, not conclusive, but only evidence to be considered with all the other evidence in the case, in determining the reason for separation, the judgment of the trial court should be affirmed and it is so ordered.

NOTE.—Reported in 73 N. E. (2d) 485.

ON PETITION FOR REHEARING

YOUNG, J.—Appellants have filed a petition for rehearing in which they point out a mistake in our statement of facts in the original opinion. In the original opinion, we inadvertently said that each of the relators was given a notice of dismissal signed by the mayor on July 30, 1945, and that the relators had given a notice to the mayor on July 31 that they had reconsidered and had decided to continue their employment. The dates should be reversed. The notice of reconsideration was dated July 30, and delivered to the mayor on that date, according to the records. The notice of dismissal was dated July 30, but was not served until July 31. However, the sequence of these events was not important or controlling in our decision of the case. The case was decided upon the theory that the employment by the City of each relator was entirely contractual and that the trial court had found upon substantial evidence that relators had themselves terminated their contracts of employment on July 24. Their contracts of employment having been terminated, it required the agreement of both parties to make new contracts. Their notices that they would continue were unilateral and ineffective and it made no difference whether such notices were before or after an equally ineffective notice of dismissal by the mayor.

Appellants, in their petition for rehearing, do not contend that the Board of Public Works and Safety acted upon the mayor's report that he had dismissed relators, but they contend that the Board of Public Works and Safety approved appointments by the mayor to fill the vacancies created by the dismissals by the mayor and they say in effect that this was tantamount to approval by the Board of Public Works and Safety of dismissals by the mayor. We do not think this follows. The

record shows without contradiction that all members of the Board were present when the relators "resigned" on July 24, and the Board may have considered they were filling vacancies caused by the "resignations" even though the mayor had reported the appointments to be to fill vacancies caused by removal. Such construction of their action is consistent with the fact that the trial court decided the case upon the theory that the separation of relators from service was by their own act and not by the act of the mayor or the Board of Public Works and Safety.

Upon a careful reconsideration of the case, we are convinced that a correct result was reached and the petition for rehearing is therefore overruled.

NOTE.—Reported in 74 N. E. (2d) 917.