**Robert A. PASTRICK, et al.,
Defendant-Appellant,**

v.

**Kenneth ARMENTA, Plaintiff-Appellee.**

No. 3–881A204.

Court of Appeals of Indiana,
Third District.

Aug. 3, 1982.

Michael W. Bosch, Asst. City Atty., East Chicago, for defendant-appellant.

Hilbert L. Bradley, Gary, for plaintiff-appellee.

GARRARD, Judge.

The City of East Chicago and its Board of Public Safety appeal from an order requiring the Board to appoint Armenta to the city fire force.

We affirm.

Kenneth Armenta, the plaintiff below, filed an application seeking employment with the East Chicago Fire Department. He followed the examination procedure required of an applicant. On March 2, 1979 Armenta was notified by the city's Civil Service Commission that he had passed the commission's examinations. The Fire Department Pension Board of Trustees informed Armenta that he had met their requirements also.

However, the city's Board of Public Safety on June 15, 1979 notified Armenta that the Board was rejecting his application on the grounds that Armenta was lacking in the requirements needed to be a firefighter. The Board did inform Armenta that he could apply again at a later date.

In response to the rejection of his application, Armenta filed a complaint seeking mandate, declaratory and injunctive relief against the City of East Chicago, the Board of Public Safety, the Civil Service Commission and the Fire Department Pension Board. The complaint alleged that the Board's action was a violation of Armenta's statutory rights under IC 19–1–37.5–1—23 and his constitutional rights to equal protection and due process.

A hearing on the complaint was held on November 21, 1979. On March 20, 1980 the trial court entered judgment, ordering the Board of Public Safety to appoint Armenta to the East Chicago Fire Department. The city filed a motion to correct errors, and from a denial of that motion it now appeals.

We find the determinative issue to be: Upon a vacancy in fire department personnel, does the Board of Public Safety have the discretion to refuse to appoint the applicant who has been certified to it by the Civil Service Commission?

In the portion relevant to appellant's contentions on appeal, IC 18–1–11–2 provides that the Board of Public Safety:

"... shall appoint a chief of police, a chief of the fire force and all other officers, members and employees of such fire and police forces, together with a market-master, station-house keeper, and other officials that may be found necessary for such department of public safety.

\* \* \* \* \* \*

They shall, in like manner, divide such city into police precincts and fire districts; and they shall have power, subject to the laws of the state and the ordinances of the city, to make and promulgate rules and regulations for the appointment of members on such forces, and for their government; Provided, That such forces shall be, as nearly as possible, equally divided politically, and no member thereof shall be dismissed except for cause, as provided in the next section."

Under IC 18–1–11–2 the Board is empowered to fill vacancies in fire department personnel. When acting in this capacity the Board is an "appointing power" pursuant to IC 19–1–37.5–20.[1]

In performing its functions as an appointing power the Board must act in conjunction with the city's Civil Service Commission. Applicants for the vacancies in the fire department must undergo a civil service examination prior to appointment. IC 19–1–37.5–3 provides:

"Appointments—Promotions—Appointment and dismissal of chief. The classified civil service and provisions of this chapter [19–1–37.5–1—19–1–37.5–23] shall include all full paid employees of the fire department of each city, town, or municipality coming within its purview, who are members of the firemen's pension fund. *All appointments to and promotions in said department shall be made*

solely *on merit, efficiency, and fitness, which shall be ascertained by open competitive examination and impartial investigations, providing that such investigation shall apply to applicants for entrance only [and] there shall be no weight given to an oral interview in competitive examinations for appointment*; Provided, however, That the chief of the fire force shall be appointed by the appointing power or the board of public works and safety from the ranks of the officers of the fire force: Provided, further, That in the event of removal or demotion of said chief of the fire force, he shall not be demoted to a rank lower than that which he had achieved through civil service examination. No person shall be reinstated in, or transferred, suspended, or discharged from any such place, position, or employment contrary to the provisions of this chapter." (Emphasis added)

The city's Civil Service Commission is responsible for ascertaining the qualifications of potential appointees to civil service positions, "by open competitive examination and impartial investigation." Also, IC 19–1–37.5–4, in relevant part, provides:

"It shall be the duty of the civil service commission:

(a) To make suitable rules and regulations not inconsistent with the provisions of this chapter [19–1–37.5–1—19–1–37.5–23]. *Such rules and regulations shall provide in detail the manner in which examinations may be held, and appointments, promotions, transfers, reinstatements, demotions, suspensions, and discharges shall be made*; and may, also, provide for any other matters connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of this chapter, or which may be found to be in the interest of good personnel adminis-

1. IC 19–1–37.5–20 provides:

"The term 'appointing power' includes every person or group of persons who, acting singly or in conjunction, as a mayor, common council, commission, or otherwise, is or are,

vested by law with power and authority to select, appoint, or employ any person to hold any office, place, position or employment subject to civil service."

tration. The rules and regulations and any amendments thereof shall be printed, mimeographed, or multigraphed for free public distribution. Such rules and regulations may be changed from time to time.

(b) All tests shall be practical and shall consist only of subjects which will fairly determine the capacity of person examined to perform duties of the position to which appointment is to be made, and may include tests of physical fitness and/or of manual skill.

\* \* \* \* \* \*

"(h) Provide for, formulate, and hold competitive tests to determine the relative qualifications of persons who seek employment in any class or position, and, as a result thereof, establish eligible lists for the various classes of position, and to provide that men laid off because of curtailment of expenditures, reduction in force, and for like causes, shall be the last man or men, including probationers, that have been appointed to said fire department. Such removal shall be accomplished by suspending in numerical order, commencing with the last men appointed to the fire department, all recent appointees to said fire department, until such reductions necessary shall have been accomplished; Provided, further, That in the event the said fire department shall again be increased in numbers, the said firemen suspended under the terms of this chapter, shall be reinstated before any new appointments to said fire department shall be made.

(i) *When a vacant position is to be filled, to certify to the appointing authority, on written request, the name of the person highest on the eligible list for the class.* If there are no such lists, to authorize provisional or temporary appointment list of such class. Any such temporary appointment shall be terminated whenever the first person becomes available for appointment from the regular list."

(Emphasis added)

In summary, the statutes prescribe procedures and guidelines to be followed by the commission in ascertaining the qualifications of applicants. The commission is to maintain a list of those applicants found eligible. Upon a written request from the appointing power, the commission is directed to certify the person highest on the list.

In the present case, the commission, pursuant to IC 19–1–37.5–4(i), certified Armenta as highest on the eligible list for the position when the Board requested the name. The Board of Public Safety, however, refused to appoint Armenta. Armenta then brought suit, seeking his appointment as provided by statute. After a hearing, the trial court ordered the Board to appoint Armenta as a fireman.

In its decision the trial court relied upon IC 19–1–37.5–4, *supra*, and IC 19–1–37.5–9. IC 19–1–37.5–9 initially states that:

"Whenever a position in the classified service becomes vacant, the appointing power [herein the Board of Public Safety] shall make requisition upon the commission for the name and address of a person eligible for appointment thereto. The commission shall certify the name of the person highest on the eligible list for the class to which the vacant position has been allocated .... *The appointing power shall forthwith appoint such person to such vacant position.*" (Emphasis added)

The trial court found that "it is manifest from the clear language of IC 19–1–37.5–9 ... that, once the commission certifies the name of an eligible person, a duty mandated upon it upon requisition by the Board, the Board is then mandated to appoint that person to such vacancy. No other rational interpretation can be given to the sentence: 'The appointing power shall forthwith appoint such person to such vacant position.'" Therefore Armenta was entitled to relief. The Board had no discretion to refuse his appointment once he had been certified by the commission.

The appellants argue that the trial court erred in that it failed to give proper effect to that portion of IC 18–1–11–2 which

states "they [the Board] shall have power, subject to the laws of the state and the ordinances of the city, to make and promulgate rules and regulations for the appointment of members on such forces, and their government . . . ." The City and Board maintain that because the Board was empowered to "make and promulgate rules and regulations," it had the statutory power to deny appointment of an applicant certified by the Civil Service Commission. Otherwise, they argue, the Board of Public Safety would not have the authority to reject an application of a "drug dealer, arsonist, or any other type of criminal . . . ."

Further, the appellants cite IC 19–1–37.- 5–23, which states:

"Effect.—Nothing in this chapter [19– 1–37.5–1—19–1–37.5–23] shall be deemed to affect, amend or repeal any portion of IC 1971, 19–1–37 [19–1–37–1—19–1–37– 28]; IC 1971, 18–1 [chs. 1–24]; and all laws amendatory or supplemental thereto. [IC 1971, 19–1–37.5–23, as added by Acts 1972, P.L. 4, § 1, p. 16.]"

and assert that IC 18–1–11–2 has not been repealed and should be given effect.

We do not find a conflict between IC 18–1–11–2 and IC 19–1–37.5–1—23 relevant to the issue herein. IC 18–1–11–2 explicitly states that the Board's power is subject to the laws of the state. IC 19–1–37.5–9, a law of the state, provides that upon certification the "appointing power shall forthwith appoint such person to such vacant position." The statutory mandate is clear. Those applicants certified by the Civil Service Commission to be highest on the eligible list *shall* be appointed.

In regard to the Board's fear of appointing drug dealers and arsonists, the civil service screening process, which statutorily entails competitive examinations and *impartial investigations* to ascertain *merit, efficiency*, and *fitness*, IC 19–1–37.5–3 should adequately protect against the hiring of individuals who are not qualified and suited to the position, for whatever reason. Further, we note and appreciate a provision of IC 19–1–37.5–9 which neither party has brought to our attention, but which we find highly relevant to the present issue. The third paragraph of IC 19–1–37.5–9 provides:

"To enable the appointing power to exercise a choice in the filling of positions, no appointments, employment or promotion in any position in the classified service shall be deemed complete until after the expiration of a period of six [6] to twelve [12] months' probationary service, as may be provided in the rules of the civil service commission during which the appointing power may terminate the employment of the person certified to him, or it, if during the performance test thus afforded, upon observation or consideration of the performance of duty, the appointing power deems him unfit or unsatisfactory for service in the department. Whereupon the appointing power shall designate the person certified as standing next highest on any such list and such person shall likewise enter upon said duties until some person is found who is deemed fit for appointment, employment or promotion for the probationary period provided herefor, whereupon the appointment, employment or promotion shall be deemed to be complete; Provided, however, That no person shall receive a permanent appointment unless he is accepted as a permanent member by the board of trustees of the firemen's pension fund and any person who fails to be accepted by said pension fund at the end of said probationary period shall be forthwith discharged, upon receipt of a resolution of the pension fund trustees that said person is unfit physically or mentally for permanent employment."

Thus the Board as the "appointing power" may terminate an appointee during the probationary period if he is deemed "unfit or unsatisfactory for service in the department." This power of termination exists "[t]o enable the appointing power to exercise a choice in the filling of positions . . . ." Thus the Board is authorized under IC 19– 1–37.5–9 to terminate an appointee during the probationary period if his performance is unfit or unsatisfactory. We emphasize that we are not now deciding what consti-

tutes proper grounds for a termination under IC 19–1–37.5–9. That issue is not now before us. But we determine that without the above quoted provision of IC 19–1–37.-5–9 the appointing power would not have "a choice in filling positions . . . ." particularly in the appointment process set down in IC 19–1–37.5–4, 9.

It is, we think, the clear mandate of the legislative scheme that to promote equal opportunity based upon merit those persons appropriately certified as qualified must be given the opportunity to demonstrate their ability to perform the duties and carry out the obligations of the office. If they fail in this opportunity they may be terminated by appropriate action.

We conclude that the Board of Public Safety does not have the discretion to refuse the appointment of an applicant certified by the city's Civil Service Commission.

We therefore affirm the judgment.

HOFFMAN, P. J., and STATON, J., concur.