CITY OF MICHIGAN CITY, and Hazel Thomas, Ray Rowe, and James Gillen as Members of the Civil Service Commission for the Fire Department of Michigan City, Indiana, Defendant-Appellant,

v.

Allen L. AUSTIN, William Pishkur, et al., as Members of a Class of Plaintiffs, and International Association of Firefighters, Local # 475, Plaintiffs-Appellees.

No. 3–1281A330.

Court of Appeals of Indiana, Third District.

Nov. 30, 1982.

Rehearing Denied Jan. 21, 1983.

William Janes, Michigan City, for defendant-appellant.

Richard A. Browne, Gordon A. Etzler, Hoeppner, Wagner & Evans, Valparaiso, James B. Clements, Michigan City, for plaintiffs-appellees.

GARRARD, Judge. ·

On December 15, 1980 the Common Council of Michigan City enacted an ordinance creating a three member civil service commission to establish policies based on merit for the selection, promotion and discipline of Michigan City firefighters. On April 11, 1981 the International Association of Fire-

fighters, Local # 475 (Union) filed suit challenging the statutory validity and constitutionality of the ordinance. On April 30, 1981 the trial court granted a temporary restraining order prohibiting the city from taking any actions pursuant to the ordinance. Both the city and the union moved for summary judgment. On November 25, 1981 the trial court entered an interlocutory order holding the ordinance to be unconstitutional, void and unenforceable. On December 14, 1981 the city filed its assignment of errors and praecipe for appeal. On January 12, 1982, in accordance with Indiana Rules of Procedure, Appellate Rule 4(B)(5)(b), the Court of Appeals of Indiana accepted jurisdiction of this appeal upon the city's petition.

The appellant's first three assignments we restate as asking whether Michigan City had the statutory license to establish by ordinance a merit commission for the selection, promotion and discipline of city firefighters.

The trial court found:

"a. Michigan City as a Second Class City is without statutory power or authority pursuant to the laws of the State of Indiana to enact such a Commission;

b. The Ordinance attempts to regulate and invade an area of responsibility which by statute, has been exclusively and completely given to the Board of Public Works of the City in all phases of the employment relationship of a firefighter and the City of Michigan City, which has been preempted by the State Statute, including the provisions governing hiring, promotions, the tenur[e] act and the pension board law;"

The city asserts that "express enabling legislation" exists authorizing the creation of a merit commission by city ordinance. The trial court found to the contrary that the Board of Public Works had exclusive authority to regulate "all phases of the employment relationship of a firefighter and the city . . . ." and the ordinance therefore improperly impinged upon the board's statutory authority.

The city contends a proper interpretation of IC 18–1–11 (repealed) yields the statutory authority for the city's merit commission ordinance. It places particular emphasis upon IC 18–1–11–3(a)(2) (1980). We deem a review of IC 18–1–11–1 and IC 18–1–11–2 to also be appropriate.

IC 18–1–11–1 provides:

"The department of public safety shall be under the charge of a board of three [3] commissioners to be appointed by the mayor of such city, as hereinbefore provided: Provided, however, That in cities of the third class, on the adoption of an ordinance therefor, and in cities of the fourth class without such ordinance, the board of public works, in addition to its powers and duties as such board, shall exercise all the powers and perform all the duties in this act assigned to and required of the board of public safety. Not more than two [2] of such commissioners shall be of the same political party. Such commissioners shall each give bond to such city in the sum of three thousand dollars [$3,000], to be approved by and filed with the city comptroller, for the faithful performance of their duties respectively, as required by this act and by ordinance. *Such board shall have the care, management, supervision and exclusive control of all matters and property relating to or connected with the fire and police forces, to the fire alarm, telegraph, fire escapes, the inspection of buildings and boilers, market places and the food sold therein, and to pounds and prisons. Such board shall have power to purchase all necessary supplies and apparatus and make all repairs needed in its department, subject to the same provisions as are in this act prescribed for the exercise of similar powers by the department of public works.* Such commissioners, in cities of the first class, shall receive an annual salary of twelve hundred dollars [$1,200] each; and, in cities of the second and third classes [class], an annual salary of four hundred dollars [$400] each. Such salaries shall be in full compensation whatever for all services of such commissioners. All persons so appointed shall

serve during good behavior and shall be of good moral character and be able to speak and write the English language. Such commissioners shall have power, for cause assigned on a public hearing, and on due notice, according to rules to be promulgated by them, to remove or suspend from office, or for a definite period deprive of pay, any officer or member of such police force, except that detectives may be dismissed at any time by said commissioners, and they shall have power to make general and special rules and regulations for the government and discipline of said force, and to make and promulgate general and special orders to said force, through the superintendent of police, who shall be the executive head of the force: And, provided further, That, in any city in which a board of metropolitan police commission[ers] is now or may hereafter be established by law, such board of metropolitan police commissioners shall have full control and management of the police officers of such city, in accordance with the laws providing for the creation of such boards and prescribing the duties of such police commissioners, and nothing herein shall be construed as affecting the control or management of the police department in any city or cities now or hereafter operating under the laws establishing such board of police commissioners." (Emphasis added.)

The union asserts the above emphasized portion of IC 18–1–11–1 declares the Board of Public Safety to be the exclusive arbiter over all matters of the firefighting force.

The powers of the Board of Public Safety are further delineated in IC 18–1–11–2:

"Any two [2] of the commissioners of public safety shall constitute a quorum. They shall adopt rules and regulations with regard to the time of the holding of regular and called meetings and of giving notice thereof; and shall elect one of their number as chairman, who shall hold such position as long as may be prescribed by the rules of the board. The commissioners shall cause all of their pro-ceedings to be recorded. In cities of the third and fourth classes, they shall designate one of their number to act as clerk; but in cities of the first and second classes, the board may appoint as clerk a person not a member of the board. Such clerk, in such cities of the first and second classes, shall receive a salary of one thousand dollars [$1,000] a year, which may be increased by ordinance to a sum not exceeding fifteen hundred dollars [$1,500]. He shall give bond for the faithful discharge of his duties as clerk of the board of safety in the sum of five thousand dollars [$5,000], to be approved by the mayor and filed with the city controller. Such commissioners shall act only as a board, and no member thereof shall have power to bind the board, or the city, except pursuant to a resolution entered in the records of the board authorizing him to act in that behalf as its authorized agent. *The board shall appoint a chief of police, a chief of the fire force and all other officers, members and employees of such fire and police forces, together with a marketmaster, stationhouse keeper, and other officials that may be found necessary for such department of public safety. The annual pay of all policemen, firemen and other appointees shall be fixed by ordinance of the common council; and it shall be lawful in such ordinance to grade the members of such forces and to regulate their pay, not only by rank, but by their length of service.* In default of any ordinance fixing the compensation of any member of such fire or police force, such commissioners shall have the power to fix the same, subject to change by ordinance. The commissioners, subject to ordinance, may also fix the number of members of such fire and police forces, and the number of appointees for other purposes. They shall, in like manner, divide such city into police precincts and fire districts; and *they shall have power, subject to the laws of the state and the ordinances of the city, to make and promulgate rules and regulations for the appointment of members on such forces, and for their government:* Provided,

That such forces shall be, as nearly as possible, equally divided politically, and no member thereof shall be dismissed except for cause, as provided in the next section. The chief of police shall have exclusive direction and control of the police force, and the chief of the fire force shall have exclusive control and charge of such fire force, subject to the rules, regulations and orders of the department of public safety. In time of peril, danger, riot, extensive conflagration, disorder, or the apprehension thereof, the chief of the fire force and the chief of the police force shall, for the time being, be subordinate to the mayor and obey his orders and directions, anything to the contrary in this act or in the ordinances of such city, or in the regulations or orders of such commissioners of public safety, to the contrary notwithstanding." (Emphasis added.)

We recently considered the effect of these two provisions in *Pastrick v. Armenta* (1982), Ind.App., 438 N.E.2d 762. Under the facts in *Pastrick* the legislature had enacted a civil service commission for firemen in Lake County pursuant to IC 19–1–37.5–1 (repealed). We held in *Pastrick* that the powers of the board set forth in IC 18–1–11–1 and IC 18–1–11–2 are subordinate to the provisions of a civil service commission created by legislative act.

The issue now before us is whether the powers of the board of safety are subordinate to the provision of a merit system created by ordinance.

Title 19, now repealed, contains statutes promulgating civil service commissions for the fire forces of specific size cities and municipalities.[1] However, the legislature had not enacted a statute which would have specifically provided a civil service commission for a city the size of Michigan City as of December 15, 1980.

The union asserts that the legislature, by enacting merit systems for specific size cities, to the apparent exclusion of others, has preempted local governments from exercising such a power. Further, IC 18–1–11–3(a)(3) (1980) provides all firemen "shall hold office or grade until they are removed by said board . . . ." Therefore, the union argues, any local ordinance impinging upon the board's authority is in conflict with state statutes and invalid.

To the contrary, Michigan City contends IC 18–1–11–3(a)(2) is an enabling statute authorizing cities to promulgate merit commissions to oversee their fire forces.

In relevant part, IC 18–1–11–3(a) provides:

"(2) This section *does not* apply to any police or fire force having a *board or commission created by state statute or local ordinance to establish or administer policies based on merit for the appointment, promotion, demotion, and dismissal of members of that police or fire force, unless the creating state statute specifically incorporates this section.*

(3) Except as provided in subsection (g) of this section [2] and except in consolidated first-class cities, *every member of the fire and police forces,* with the exception of the fire and police chiefs, including police radio operators and police signal and fire alarm operators, *appointed by the mayor, the commissioners of public safety or the board of metropolitan police*

---

1. The appellee cites these statutes in particular:
   IC 19–1–14–1 (merit commission authorized for police and fire forces in Muncie).
   IC 19–1–14.2 (merit commission for police in New Albany).
   IC 19–1–14.3 (Anderson police).
   IC 19–1–14.5–1 (Lafayette police).
   IC 19–1–20–1 (Fort Wayne fire force).
   IC 19–1–21–1 (Gary police).
   IC 19–1–29.5–1 (Terre Haute police).
   IC 19–1–31–1 (LaPorte police).
   IC 19–1–31.5 (Evansville police).
   IC 19–1–37.5–1 (merit commissions for firemen in Crown Point, East Chicago, Gary, Hobart, Whiting).

2. "(g) The mayor may reduce in grade any member of the fire or police force who holds an upper level policymaking position. This reduction in grade may be made without adhering to the requirements of (a)(3) through (f) of this section. However, a member may not be reduced in grade to a rank below that which he held prior to his appointment to the upper level policymaking position."

commissioners, shall hold office or grade until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such members in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force, with the exception of the fire and police chiefs, including police radio operators and police signal and fire alarm operators, of any crime, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay. Upon any investigation of the conduct of any member of the fire or police force, with the exception of the fire and police chiefs, or upon the trial of any charge preferred against any member of either of such forces, such board of commissioners shall have power to compel the attendance of witnesses, and to examine them under oath, and to require the production of books, papers and other evidence, at any meeting of such board, and for that purpose may issue subpoenas and cause the same to be served and executed in any part of the county where such city is located. IC 18–1–4–2 [repealed, see 18–1–1.5–2], in respect to any witness who shall refuse to testify, or to produce books or papers in his or her possession or under his or her control, in investigation and impeachment proceedings before the common council, or any committee thereof, so far as applicable, shall govern in like case

before such board of public safety or the board of metropolitan police commissioners, and the proper court may compel, by attachment, commitment or other punishment, compliance with the order." (Emphasis added.)

Prior to 1980, IC 18–1–11–3 did not contain subsection 3(a)(2). Before the amendment, the statute began by stating:

"Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board."

The union has termed this statute the Policemen and Firemen's Tenure Act and argues that it invalidates Michigan City's ordinance. The union contends that the 1980 amendment, IC 18–1–11–3(a)(2), was not intended by the legislature to be "an express grant of authority for municipalities to create, by ordinance, a merit commission for police or fire forces. Rather, this section was merely a legislative recognition of the numerous statutes which did, in fact, confer authority upon specific cities to create merit commissions." In support of its argument the union reasons that if IC 18–1–11–3(a)(2) "can be construed as authority for any city to create a merit commission by ordinance, it would appear that there has been a tremendous waste of legislature-energy in the passage of the above-listed acts, all of which would be rendered meaningless by Michigan City's argument."

On the other hand, the city argues that the legislature, by amending IC 18–1–11–3, was providing all cities with the power to create merit commissions for their fire forces.

In determining the merits of these conflicting contentions, we note IC 18–1–11 has been repealed and replaced by provisions of Title 36. Title 36 does contain the authority by which a municipality such as Michigan City may create a civil service merit commission for its fire force. *See* IC 36–8–3.5–1, 23.[3]

Also, while IC 36–8–3–4 and IC 36–8–3–4.1 authorize the safety board to discipline firemen, IC 36–8–3–5 provides that the above two sections (4, 4.1):

"... do not apply to a police or fire department having a board or commission established by statute or ordinance to establish or administer policies based on merit for the appointment, promotion, demotion, and dismissal of members of the department, unless the establishing law specifically incorporates one [1] or both of these sections."

▮ In light of the recent legislative enactments in Title 36, we conclude the legislature intended that all cities have the authority to establish a civil service merit commission to supervise their fire forces. A specific legislative enactment is not now required for a city to establish a civil service merit commission under Title 36.

When the ordinance before us was passed in 1980, IC 18–1–11–3(a)(3) provided that "every member of the fire ... forces ... shall hold office or grade until they are removed by said board." Yet IC 18–1–11–3(a)(2) explicitly provided that:

"This section [section 3] does not apply to any police or fire force having a board or commission created by state statute or local ordinance to establish or administer policies based on merit for the appointment, promotion, demotion, and dismissal of members of that police or fire force, unless the creating state statute specifically incorporates this section."

▮ IC 18–1–11–3(a)(2) refers to a "commission created by ... local ordinance ...." Under the present provisions in Title 36 a city's authority to create a civil service commission by local ordinance is clear. The authority to do so under Title 18

**3.** IC 36–8–3.5–1 provides that the merit systems established by legislative act may be retained by relevant municipalities and cities.

"36–8–3.5–1 Applicability of chapter—Effect of chapter on existing merit systems.— (a) This chapter applies to each municipality or township that has a full-time, paid police or fire department. It provides the exclusive statutory manner for such a unit to exercise the power of establishing a merit system for its police or fire department. This chapter does not affect merit systems established under any other authority, except as provided by subsection (b).

"(b) If a city had a merit system for its police or fire department under IC 18–4–12, IC 19–1–7, IC 19–1–14, IC 19–1–14.2, IC 19–1–14.3, IC 19–1–14.5, IC 19–1–20, IC 19–1–21, IC 19–1–29, IC 19–1–29.5, IC 19–1–31, IC 19–1–3.15, or IC 19–1–37.5, 18–4–12–1—18–4–12–59, 19–1–7–1—19–1–7–9, 19–1–14–1—19–1–14–26, 19–1–14.2–1—19–1–14.2–20, 19–1–14.3–1—19–1–14.3–21, 19–1–14.5–1—19–1–14.5–6, 19–1–20–1—19–1–20–7, 19–1–21–1—19–1–21–18, 19–1–29–1—19–1–29–10, 19–1–29.5–1—19–1–29.5–29, 19–1–31–1, 19–1–35.1–1—19–1–35.1–23, or 19–1–37.5–1—19–1–37.5–23, it may retain that system by ordinance of the city legislative body passed before January 1, 1983. The ordinance must incorporate all the provisions of the prior statute and may not be amended or repealed by the legislative body before January 1,

1985. If the legislative body decides to repeal the ordinance after December 31, 1984, the legislative body shall in the repealing ordinance also establish a new merit system under section 3 [36–8–3.5–3] of this chapter. After the new merit system takes effect, all members of the department are entitled to the same ranks and pay grades they held under the prior system, subject to changes made in accordance with this chapter.

"(c) If a city had a merit system for its police or fire department under a prior statute but fails to retain that system under subsection (b), the city legislative body shall, before July 1, 1983, pass an ordinance to establish a new merit system under section 3[36–8.3.5–3] of this chapter. If the new merit system is approved as provided by section 4 [36–8–3.5–4] of this chapter, it takes effect as provided by that section. However, if the new merit system is rejected under section 4 of this chapter, within thirty [30] days the city legislative body shall adopt an ordinance to retain the prior merit system. The prior merit system remains in effect until the new merit system takes effect, after which time all members of the department are entitled to the same ranks and pay grades they held under the prior system, subject to changes made in accordance with this chapter."

as of December 1980 was not so well defined. Even so, we believe that the exclusionary effect of IC 18–1–11–3(a)(2) considered in conjunction with the Powers of Cities Act, IC 18–1–1.5–1, 16 vested in the City of Michigan City the statutory power to create by ordinance a civil service commission for its fire force.

Under the Powers of Cities Act, IC 18–1–1.5–2 provides:

"A city [or town] may establish and operate a government for the purpose of carrying out its powers and functions. The power to establish and operate a government includes the power to do the following:

(1) Sue and be sued.

(2) Have a corporate seal.

(3) Acquire and own interests in real and personal property.

(4) Use, protect, maintain and dispose of interests in real or personal property owned by the city [or town].

(5) Enter into contracts.

(6) Pay debts and expenses.

(7) Borrow money in accordance with applicable law and subject to the limitations of the constitution.

(8) Accept donations of money, property, services or other advantages.

(9) Enact ordinances and establish penalties for their violation, subject to the limitations of section 19 [18–1–1.5–19] of this chapter.

(10) Require the attendance of witnesses and the production of documents germane to matters being considered at meetings of the common council, or of any board, department or agency empowered by law or ordinance to hear and determine any matter.

(11) Punish contempt and disorder in rooms of the common council or of any board, department or agency of the city [or town].

(12) *Hire and discharge employees, except where the hiring or discharge is prescribed by the general assembly.*

(13) Provide a system of pensions and retirements, except where such a system is prescribed by the general assembly, for officers and employees, which pension and retirement boards may accept gifts and bequests.

(14) *Establish a system of employment with respect to any class of employees under which such employees would have security of employment and would be hired, promoted, demoted, transferred, discharged, compensated, and accorded other benefits and advantages on the basis of merit and qualification.*

(15) Enter into contracts and execute documents necessary to receive money, property, services, or other advantages from the state government, federal government, or from any other source.

(16) Ratify any action of the city [or town] or its officers and employees if that action could have been approved in advance of the action." (Emphasis added.)

In addition, IC 18–1–1.5–16 states:

"In addition to all powers specifically enumerated in sections 2 through 15 [18–1–1.5–2—18–1–1.5–15] of this chapter, and any other power granted to a city or any agency thereof under any other law of this state, *every city may, within its territorial jurisdiction, except as otherwise provided in this chapter [18–1–1.5–1—18–1–1.5–30], exercise any power or perform any function necessary in the public interest in the conduct of its municipal or internal affairs, which is not prohibited by the Constitution of this state or the Constitution of the United States, and which is not by express provision denied by law or by express provision vested by any other law in a county, township or the state, special taxing district or separate municipal or school corporation.*" (Emphasis added.)

And IC 18–1–1.5–23 provides:

"The powers of cities as defined in this chapter [18–1–1.5–1—18–1–1.5–30] shall be construed liberally in favor of such cities. A specific enumeration, or failure to enumerate, particular powers of cities in section 1 [18–1–1.5–1] of this chapter or in any other law shall not be construed as limiting in any way the general and

residual powers conferred upon cities as stated in section 16 [18–1–1.5–16] of this chapter. It is the intention of this chapter and the policy of the state to grant to cities full power and right to exercise all governmental authority necessary for the effective operation and conduct of government with respect to their municipal and internal affairs. The rule of law that cities have only those powers expressly conferred by statute, necessarily implied or dispensable to the declared objects and purposes of the corporation, and that any fair doubt as to the existence of a power shall be resolved against the existence thereof, shall have no application to the powers granted to cities herein."

In summary, IC 18–1–11–3(a)(2) provides in effect that when a local ordinance creates a civil service commission to oversee the fire force, the powers of the board of public safety over firemen removal yield to those of the commission. Also, the city's power to create a commission by ordinance is delineated in the Powers of Cities Act.

■ The union argues that the city's power to do so was preempted by state action. However, the legislature had not enacted a civil service commission for Michigan City. We conclude that Michigan City's powers were not preempted by state action. Michigan City has the statutory authority to enact by ordinance a civil service commission for its fire force and the trial court erred in ruling otherwise.

The trial court further found that ordinance 2560 was "unconstitutional, void and unenforceable" because "[a]ttempts to modify, change and abridge the rights and privileges and working conditions given to the firefighters pursuant to the Collective Bargaining Agreement without their expressed or mutual agreement is an enactment of ex post facto legislation."

On January 4, 1979 Michigan City and the union entered into an employment contract. The city argues that no invalidating conflicts exist between the ordinance and the provisions of the employment contract and further, that the enactment of the Merit Commission Ordinance was expressly contemplated and accepted by the union. The city therefore contends the trial court erred in finding the ordinance modified contractual rights of the union without its consent.

The city asserts the ordinance deals only with the selection, promotion and discipline of firefighters whereas the employment contract deals basically with firefighters' working conditions and benefits. In some instances where the contract and ordinance are in conflict, such as in the procedures for promotion under each, the contract is subordinated to the ordinance by express provisions in the contract. For example, the contract provides that promotions shall be made by the Board of Public Works, but it also states "This article shall become null and void upon the local enactment of a lawful merit system which sets forth a promotional plan." The contract also provides for an evaluation procedure for firemen, but it contains the clause "Provided, however, that should a merit system be implemented at any time, its provisions may alter in any respect the provisions of the article."

■ From these provisions in the contract, we agree with the city that "the parties expressly contemplated the enactment of a Civil Service Ordinance to institute a promotional plan based on merit. The contention of the union that the ordinance contravenes the promotional design of the contract, and is therefore invalid, is inconsistent with the terms of the contract itself, from which the intention of the parties is determined."

The promotion and evaluation provisions of the employment contract are provisions affected by the ordinance yet these provisions contain clauses explicitly stating that should a merit system be implemented, the provisions of the contract are to be no longer applicable.

We agree with the city that as to these two provisions of the contract, the ordinance controls by the express agreement of the parties. We find that the trial court erred in holding the ordinance in total to be null and void as ex post facto legislation.

However, rules of due process may protect rights of firemen which they acquired under the contract prior to the amendment of IC 18–1–11–3 and the enactment of the ordinance.

In *Dortch v. Lugar* (1971), 255 Ind. 545, 266 N.E.2d 25 the Indiana Supreme Court stated:

"We are unable to discover any provision in our constitution *requiring* the guarantee of tenure or rank to employees of a municipal governmental unit."

266 N.E.2d at 45.

However, in *State ex rel. Dunlap v. Cross* (1980), Ind.App., 403 N.E.2d 885 we decided that IC 18–1–11–3, the firefighters' and police officers' tenure act, created property rights which may not be denied without due process of law.

In 1979, when the contract was entered into, IC 18–1–11–3 provided that the board could remove a fireman for any cause other than politics, only after written notice was served, and an opportunity for a hearing was given.

In *Wencke v. City of Indianapolis* (1982), Ind.App., 429 N.E.2d 295, 297–98 we stated:

"It is well settled that the power to enact statutes and ordinances has as a necessary incident the power to repeal. The General Assembly may not by any enactment limit the rights of future General Assemblies. *Hamilton County Council v. State ex rel. Groff* (1949), 227 Ind. 608, 87 N.E.2d 810. This power to repeal, however, is subject to constitutional restrictions such as the prohibition against impairment of contracts. If, in the instant case, the enactment of IC 18–4–12–20.5 impermissibly impaired a contractual obligation owed Wencke, IC 19–1–1–1 will govern.

We agree that in Indiana police are employees and their relationship with the City is strictly contractual. *State ex rel. Palm v. City of Brazil* (1947), 225 Ind. 308, 73 N.E.2d 485, 74 N.E.2d 917; *Foley v. Consolidated City of Indianapolis* (1981), Ind.App., 421 N.E.2d 1160. The terms and conditions of the contract include the relevant statutory provisions which exist at the time the contract is made as if such provisions were expressly incorporated. *Evansville-Vanderburgh School Corporation v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831; *Foley,* 421 N.E.2d at 1163. For example, this court has previously determined that a contract of employment with a police officer included a statutory provision concerning minimum compensation. *Kirmse v. City of Gary* (1944), 114 Ind.App. 558, 51 N.E.2d 883. *See also Bruck v. State ex rel. Money* (1950), 228 Ind. 189, 91 N.E.2d 349.

\*　　\*　　\*　　\*　　\*　　\*

A retrospective application of a statute to a contract entered into before the effective date of that statute can impair contractual obligations contrary to both the United States and Indiana Constitutions. U.S. Const. Art. 1 § 10; Ind. Const. Art. 1 § 24. There are, however, exceptions to the general rule. The prohibition against impairment of contracts is not an absolute one. The contract clause of either constitution does not restrict the exercise of the state's police power to protect the public health, safety, and welfare. *Finerty v. State ex rel. School City of Gary* (1938), 213 Ind. 470, 12 N.E.2d 941. In order to justify the impairment of a contractual obligation, there must be a necessity for the legislation and the legislation must be reasonable under the circumstances. *In re La Fortune* (9th Cir.1981), 652 F.2d 842."

The parties have argued in their briefs for and against the validity of ordinance 2560 *in total.* We believe that as to firemen hired after December 15, 1980 the ordinance *in its entirety* controls those firemen's employment relationship with the city. The trial court's finding to the contrary is in error. However, the ordinance's effect upon those firemen hired pursuant to the contract, and prior to December 15, 1980, is subject to requirements of due process and rights of contract as enunciated in *Wencke v. City of Indianapolis, supra.* While the ordinance is constitutionally valid

on its face, its enforcement may impinge upon constitutionally recognized rights of contract arising from the employment contract for those firemen hired before December 15, 1980. The trial court declared the ordinance to be "unconstitutional, void and unenforceable in total." Accordingly, the court did not consider how the ordinance, if valid, might impinge unconstitutionally upon the firemen's property rights under the contract. We therefore remand this case to the trial court for further proceedings on this issue consistent with our opinion.

Lastly, the trial court determined the ordinance to be invalid because it "is against public policy and the statutes for a department of municipal government to continue its operation when no specific appropriation has been made to fund its operations in accordance with law ...."

The appellant city maintains that the merit commission was adequately funded. Within the appropriations for the board of public works was $70,000 for "other contractual services," of which $25,000 was labeled miscellaneous. $15,000 of these funds was transferred into a fund for the merit commission. Thus, the merit commission was funded through the board of public works and safety appropriations ordinance.

The appellees contend that "the trial court's finding was a correct statement of the law in view of the evidence before it" and in support cite IC 18–1–6–8 (repealed), which provides:

"No executive department, officer or employee thereof shall have power to bind such city to any contract or agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purposes of such department; and all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriations are declared to be absolutely void; Provided, That the board of public works shall have power to contract with any individual or corporation for lighting the streets, alleys and other public places or

for supplying the city with gas, water, steam, power, heat or electricity, and for the collection, removal and disposal of garbage, ashes or refuse, on such terms and for such times, not exceeding the term fixed by section 254 [18–1–21–6] of this act, as may be agreed upon; but any such contract shall be submitted to the common council of such city and approved by ordinance before the same shall take effect, and, if so approved, shall immediately become effective; Provided, further, That nothing herein contained shall prevent any such department from issuing any bond or other obligation expressly authorized by this act and provided for by ordinance."

IC 18–1–6–8 states that contracts requiring funds beyond existing appropriations are void. Yet what is at issue is the validity of the ordinance creating the commissions rather than contracts entered into by the commission. Apparently the common council had the power to transfer appropriated funds from one department to another pursuant to valid exercises of its authority. The obligations of the commission incurred prior to the temporary restraining order were paid according to the record. Thus the commission was able to perform its duties and we fail to see how the council's failure to appropriate specific funds for the commission constitutes grounds for finding the ordinance invalid, particularly when funds were apparently available for transfer.

Therefore, we reverse the trial court and remand the case for proceedings consistent with this opinion.

HOFFMAN, P.J., and STATON, J., concur.